UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY BREWER,

                Plaintiff,

v.

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION, et al.,

                Defendants.

Case No. 07 CV 2928 (BSJ)

ECF Case

---

# DEFENDANT STATE STREET BANK AND TRUST COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

ANDREW B. KRATENSTEIN
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
212.547.5400

WILBER H. BOIES, P.C.
NANCY G. ROSS
CHRIS C. SCHEITHAUER
McDermott Will & Emery LLP
227 W. Monroe Street
Chicago, IL 60606
312.984.7686
Counsel for Defendant
State Street Bank and Trust Company

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 3
    A. The Plans ..................................................................................................................... 3
    B. Named Fiduciaries Under The Plans And State Street's Role As Trustee ............. 6
    C. State Street's Role Under The Investment Management Agreement ................... 6

III. ARGUMENT ........................................................................................................................ 7
    A. Plaintiff's Claims Are Barred By ERISA's Three-Year Statute Of Limitations ........................................................................................................................ 7
    B. Plaintiff Lacks Standing To Assert Claims Concerning Plans In Which She Did Not Participate ............................................................................................. 7
    C. State Street Cannot Be Held Liable For Breach Of Fiduciary Duty Because It Had No Discretion To Eliminate The Single Equity Funds ................. 7
        1. The Decision To Include The Single Equity Funds Was A Plan Design Decision, Not A Fiduciary Act .................................................. 7
        2. The Plan Documents Required State Street To Maintain The Single Equity Funds And State Street Did Not Have Discretionary Authority To Eliminate Or Diversify The Funds ................................ 8
        3. Single Equity Funds In The Plans Complied With ERISA ................. 8
        4. Plaintiff Cannot Establish The Necessary Causation To Plead An ERISA Violation .................................................................................... 8
        5. Plaintiff Cannot Plead An ERISA Claim To Recover Better Investment Results Than The Stock Market ........................................ 8

IV. CONCLUSION .................................................................................................................... 9

I.   **INTRODUCTION**

This case is one of two virtually identical cases pending before this Court. The other case is <u>Young, et al. v. General Motors Investment Management Corporation, et al.</u>, Case No. 07 CV 1994 (BSJ) (filed March 8, 2007) (hereafter "<u>Young Lawsuit</u>"). State Street Bank and Trust Company ("State Street") is a defendant in the <u>Young Lawsuit</u> and has also filed a motion to dismiss in that case. The <u>Young Lawsuit</u> involves claims against General Motors Investment Management Corporation ("GIMICo") and State Street for alleged breaches of fiduciary duties in connection with four retirement plans sponsored by General Motors and its subsidiary Saturn Corporation. This case (the <u>Brewer Lawsuit</u>) involves essentially identical claims against the same defendants, brought by the same counsel, for the same alleged breaches of fiduciary duties with regard to four retirement plans sponsored by Delphi Corporation ("Delphi") (hereinafter the "Plans"). Delphi was spun off from GM in 1999 and the benefit plan structure and plan documents for the two companies – and the role of State Street – are essentially identical. The vast majority of the allegations in the <u>Young Lawsuit</u> and the <u>Brewer Lawsuit</u> complaints are word-for-word identical, and the only substantive distinction is that one of the investments at issue in the <u>Young Lawsuit</u> is not at issue in the <u>Brewer Lawsuit</u> (and vice-versa).[1]

State Street's arguments for dismissal of two cases are likewise essentially identical. In both the <u>Young Lawsuit</u> and the <u>Brewer Lawsuit</u>, plaintiffs' claims are barred by ERISA's statute of limitations. Furthermore, plaintiffs lack standing to sue about ERISA plans in which they were not participants, and because ERISA requires only diversification of plan investment options – not diversification **within** each investment option – plaintiffs have failed to state a claim upon which relief may be granted.

Rather than file separate memoranda in support of its motions to dismiss that repeat the same arguments in detail, State Street has detailed all of its arguments in the <u>Young Lawsuit</u>

---

[1] In the <u>Young Lawsuit</u>, plaintiffs allege that one of the improper Single Equity Funds for the GM-sponsored Plans was the Delphi Stock Fund. In the <u>Brewer Lawsuit</u>, plaintiff alleges that one of the improper Single Equity Funds for the Delphi-sponsored Plans was the GM Stock Fund. Plaintiff makes this distinction notwithstanding that the Plans in both cases had both the Delphi Stock Fund and the GM Stock Fund.

memorandum. In this memorandum – which State Street suggests that the Court should consider **after** the memorandum in the <u>Young Lawsuit</u> – State Street reviews the few factual distinctions between the two cases and refers the Court to the arguments made in support of its motion in the <u>Young Lawsuit</u>. For the most part, State Street adopts and incorporates by reference the arguments set out in detail in the memorandum in the <u>Young Lawsuit</u>.

In this <u>Brewer Lawsuit</u>, plaintiff Mary M. Brewer has sued State Street Bank on the theory that State Street imprudently allowed certain assets of four ERISA plans sponsored by Delphi (collectively the "Plans") to be invested in funds that held single equities ("Single Equity Funds") as opposed to funds that held many equities. Plaintiff alleges that the Single Equity Funds violated ERISA's diversification requirements. Plaintiff's apparent claim is that ERISA precludes offering Single Equity Funds as an investment option because such a fund is an "extremely risky and volatile investment." [Compl., ¶ 61] As a matter of law, ERISA does not bar Single Equity Funds and instead looks to the diversification of the entire plan. As a matter of fact (and as the Complaint recognizes), the Delphi Plans as a whole were diversified and offered many different investment options for participants to choose from, including diversified mutual funds with varying risk and investment features (<u>e.g.</u>, short-term bonds, aggressive growth, overseas equities, etc.) [<u>See</u> Compl. ¶ 34 (Plans offered investments "in one or more of over **thirty funds.**")(emphasis added)][2]

For the same reasons detailed in State Street's motion to dismiss the <u>Young Lawsuit</u>, the complaint in this Brewer Lawsuit cannot be cured and requires dismissal without leave to amend:

    1.    All of plaintiff's claims are barred by the three year statute of limitations for an ERISA fiduciary duty claim. The Single Equity Funds were established between 1996 and 2003, and the plan documents distributed to participants, including the prospectuses, disclosed the Single Equity Funds and allowed participants to move to other investment options.

---

[2] Actually, the plans offered even more investment funds to choose from. [<u>See</u>, <u>e.g.</u>, Salaried Plan (Exh. A), pp. 15-16 (listing at least 75 diverse funds from which a participant could choose to invest).

2.  According to the Complaint in this Brewer Lawsuit, the single named plaintiff was not a participant in Hourly Plan, the ASEC Plan or the Mechatronic Plan. As a result, plaintiff lacks standing to sue about those three plans.

3.  Plaintiff Brewer's complaint also has apparent – and fatal – defects on the merits for the same reasons as in the Young Lawsuit. To begin with, the decision for the Plans to include the Single Equity Funds was not a fiduciary act by State Street, but rather a "plan sponsor" decision by Delphi. The Plans were **designed** to include Single Equity Funds and State Street had no role – fiduciary or otherwise – in that decision. The plan documents **required** State Street to maintain the Single Equity Funds, and State Street did not have the alleged discretionary authority to eliminate or diversify those funds. The entire claim about State Street's alleged fiduciary responsibility to override the terms of the Plans and eliminate the allegedly imprudent Single Equity Funds is a repackaged claim that was rejected in In re General Motors ERISA Litigation, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich. 2006) (dismissing State Street). Finally, as a matter of law, plaintiff is simply wrong in her contention that holding ERISA plan assets in single equity funds violates ERISA's diversification requirement.

Simply put, for the same reasons that are detailed in State Street's brief in the Young Lawsuit, plaintiff has pled herself out of Court. The myriad allegations of the complaint actually establish that she does not have a viable claim for breach of fiduciary duty under ERISA.

## II. STATEMENT OF FACTS[3]

### A. The Plans

This Brewer Lawsuit involves four defined contribution plans sponsored by Delphi, which are collectively referred to as the "Plans: (1) the Delphi Savings-Stock Purchase Program for Salaried Employees ("Salaried Plan"); (2) the Delphi Personal Savings Plan for Hourly-Rate

---

[3] As detailed in State Street's brief in the Young Lawsuit, in ruling on this motion to dismiss the Court may consider matters alleged in the Complaint, as well as matters set forth in the relevant plan documents, Prospectuses, Trust and Investment Manager Agreements. Because these instruments are referenced and quoted from in the Complaint, or are otherwise alleged to give rise to State Street's fiduciary responsibility and therefore liability, they are properly considered in connection with this motion to dismiss. [See State Street's Brief in the Young Lawsuit, fn. 1]

Employees ("Hourly Plan"); (3) the ASEC Manufacturing Savings Plan ("ASEC Plan"); and (4) the Delphi Mechatronic Systems Savings-Stock Purchase Program ("Mechatronic Plan").[4] [Compl., ¶ 2] The Plans are defined contribution plans in which separate accounts are maintained for each participant, and the benefits each participant will receive are based on the amount of employer and employee contributions to the participant's account and the investment performance of those contributions. [Compl., ¶¶ 33-34]

Under the Plans, participants (Delphi employees) could authorize salary deductions to be contributed into the account of the plan in which they participated. Subject to certain restrictions, participants could then allocate the assets in their plan accounts, on a daily basis, among a variety of investment options offered through the Plan. The Salaried Plan, for example, provided that portion of the employee's and employer's contributions to the plan had to be invested in the plan sponsor's Common Stock Funds (i.e., Delphi common stock fund) and that 50% of an employee's contributions had to be invested in "one of over thirty funds, most of which are mutual funds." [Compl., ¶ 34; but see Salaried Plan (Exh. A), pp. 15-16 (listing at least **75 diverse funds** from which a participant could choose to invest his or her contributions to the plan] These included mutual funds with varying risk and investment features (e.g., short-term bonds, aggressive growth, overseas equities, etc.). [See, e.g., Salaried Plan (Exh. A), pp. 15-16]

In addition to the diverse set of mutual fund options, the Plans were required to offer certain specified investment funds as a matter of Plan design. As plaintiff alleges, for example, GM spun-off its Delphi subsidiary in 1999 and the transaction included "creating clone plans of existing GM plans" including a GM Class H Stock Fund that invested in GM stock. ("GM Stock Fund"). [Compl., ¶ 39-41] The GM Stock Fund was closed effective December 23, 2003. [Compl., ¶ 42] Plaintiff further alleges that, as a result of corporate sales, mergers, acquisitions and spin-offs, certain of the required GM Class H stock became the stock of Raytheon Corp.,

---

[4] The Plans are attached as Exhibits A, B, C, and D, respectively.

DIRECTV and News Corp. New funds were created in the Plans to reflect this changed stock, including the Raytheon Common Stock Fund ("Raytheon Fund"), DIRECTV Fund ("DIRECTV Fund") and the News Corp. Non-Voting Common Stock Fund ("News Corp. Fund"). [Compl., ¶ 42]

Plaintiff alleges that two additional GM common stock funds underwent similar transformations as a result of GM restructuring. GM Class E common stock in the Delphi Plans was replaced with shares of Electronic Data Systems ("EDS") when EDS was spun-off from General Motors in 1996. As a result of the Plans receiving EDS stock in exchange for the GM Class E common stock, the Plans assets in the GM Class E Common Stock Fund were converted to the EDS Common Stock Fund ("EDS Fund"). [Compl., ¶ 43; Salaried Plan (Exh. A) p. 16]

Plaintiff refers collectively to these new funds resulting from the conversion of GM common stock during the corporate transactions as Single Equity Funds because the new funds held assets primarily in the stock of the new corporations.

While the Plans required that the investment options include Single Equity Funds for holding the stock of the new companies, plaintiff and other individual participants were not required to maintain any investment in these funds. Furthermore, the Plans did not permit any further contributions or exchanges into those funds after the funds were established. [See, e.g., Salaried Plan (Exh. A), p. 16 Article I, § 5(A) (may trade out of fund "[h]owever, no contributions, dividend reinvestments" etc. are permitted into the fund); see also Prospectuses,[5] Exh. E at 24-25 and Exh. F at 23-25] Participants (including the plaintiff) retained his or her own discretion to exchange assets out of those Single Equity Funds for any of the other diverse set of funds offered by the Plans. [See, e.g., Salaried Plan (Exh. A) Article II, § 2 ("A Participant may elect to exchange assets held in the [Single Equity Funds] to any of the investment options specified under Article I, Section 5(A)"); Hourly Plan (Exh. B), §§ 7.03(b), 7.04(b), 7.05(b)]

---

[5] Exhs. E and F are plan Prospectuses, dated January 1, 2004. These documents are among those expressly relied upon by plaintiff in the Complaint. [See Compl., p. 1]

### B.     Named Fiduciaries Under The Plans And State Street's Role As Trustee

The Committee of the Delphi Corporation Board is designated as the Named Fiduciary of the Plans and General Motors Investment Management Corporation ("GMIMCo") is designated as the Named Fiduciary of the Plans for purposes of Plan investments. [See, e.g., Salaried Plan (Exh. A), Article IV, § 1] Additionally, the participants in the Plan have the authority to direct the investments of their own accounts and, therefore, have been designated under the respective Plans as a "named fiduciary" and are authorized to direct the trustee as to how to invest their own accounts. [Trust (Exh. H), pp. 1, 3; Salaried Plan (Exh. A), Art. IV, § 18; Hourly Plan (Exh. B), Art. VIII, § 8.07]

State Street served as the Trustee of the Trust Fund established to hold the assets of the Plans. [Compl., ¶ 35] State Street's responsibilities as directed trustee were spelled out in the May 28, 1999 Delphi Automotive Systems Savings Trust (the "Trust"), executed by State Street as trustee and by GMIMCo under its delegated authority as named fiduciary of the Plans. [See Trust (Exh. H)] The Trust expressly provides that State Street "shall" establish and maintain investment fund accounts as directed by the named fiduciary. [Trust, Art. III, § 3.1]

### C.     State Street's Role Under The Investment Management Agreement

In addition to its asset holder role as Plan trustee, State Street was retained as an investment manager pursuant to an Investment Management Agreement (the "Agreement"), attached hereto as Exhibit I. Pursuant to the Agreement, State Street was required to manage the Investment Accounts as directed in the Agreement. Specifically, the Agreement required State Street to maintain separate Investment Accounts "which shall consist of the applicable class of common stock" of GM's various classes of common stock, Delphi, Raytheon and EDS. [Agreement (Exh. I), ¶, 1; see also Exhibit A to the Agreement (Exh. I), p. 11 (outlining Investment Accounts to be maintained by State Street, including the GM Stock Fund, GM Class H Stock Fund, Raytheon Stock Fund, EDS Stock Fund and Delphi Stock Fund)]

The Agreement limited State Street's authority and discretion as investment manager consistent with the very purpose of the various Single Equity Funds – i.e., to maintain an

investment fund that invests in a particular stock  The Agreement specifically provides that State Street's discretionary authority in managing the Investment Accounts, and the powers to be exercised in that connection, were at all times "SUBJECT TO THE TRUST AGREEMENT AND THE WRITTEN FUND POLICY FOR EACH INVESTMENT ACCOUNT." [Agreement (Exh. I), §§ 3-4 at 2 (emphasis in original)]

### III. ARGUMENT

#### A. Plaintiff's Claims Are Barred By ERISA's Three-Year Statute Of Limitations

State Street incorporates herein the discussion concerning the statute of limitations in its brief on the motion to dismiss the Young Lawsuit. As in the Young Lawsuit, all of the investments in the Single Equity Funds were made more than three years before Brewer filed his Complaint and participants, including plaintiff, received notice of the funds, through the prospectuses distributed to participants. [See Compl. ¶¶39-45; see also Prospectuses Exh. E at 24-25 and Exh. F at 23-25] Brewer's claim in this case is barred by ERISA's three-year statute of limitations for the same reasons as the claim in the Young Lawsuit.

#### B. Plaintiff Lacks Standing To Assert Claims Concerning Plans In Which She Did Not Participate

State Street incorporates herein the discussion concerning standing in its brief on the motion to dismiss the Young Lawsuit. In this Brewer Lawsuit, the plaintiff alleges she was a participant only in the Salaried Plan. She does not allege she was a participant in the Hourly Plan, the ASEC Plan or the Mechatronic Plan. [Compl., p.1 and ¶ 13] As a result, plaintiff lacks standing to sue about those three plans.

#### C. State Street Cannot Be Held Liable For Breach Of Fiduciary Duty Because It Had No Discretion To Eliminate The Single Equity Funds

##### 1. The Decision To Include The Single Equity Funds Was A Plan Design Decision, Not A Fiduciary Act

Just as in the Young Lawsuit, the decisions to establish and maintain the Single Equity Funds in the Plans were all decisions by the plan sponsor in connection with corporate

transactions in which GM business subsidiaries were "spun off" as public companies. State Street cannot be held liable for those corporate decisions. State Street refers and incorporates herein its arguments in the Young Lawsuit brief.

### 2. The Plan Documents Required State Street To Maintain The Single Equity Funds And State Street Did Not Have Discretionary Authority To Eliminate Or Diversify The Funds

Just as in the Young Lawsuit, plaintiff erroneously alleges that State Street somehow had a duty to override the terms of the Plans. It is apparent from the documents referred to in plaintiff's complaint that State Street had no such role, duty or discretion. [Trust, Art. III, § 3.1; Agreement (Exh. I), §§ 3-4 at 2 (emphasis in original)] Again, State Street refers the Court to its specific discussion in its brief in the Young Lawsuit on this issue.

### 3. Single Equity Funds In The Plans Complied With ERISA

Just as in the Young Lawsuit, plaintiff has no viable claim that the Plans' Single Equity Funds violated ERISA § 404(a)(1)(C) on diversification. Although plaintiff alleges that the individual Single Equity Funds at issue were not diversified, that is not the proper legal issue and cannot be the predicate for a viable ERISA claim. It is clear from plaintiff's complaint and the plan documents that the **Plans' assets as a whole** were diversified. State Street incorporates and refers the Court to the specific discussion in its brief in the Young Lawsuit on this issue.

### 4. Plaintiff Cannot Establish The Necessary Causation To Plead An ERISA Violation

Just as in the Young Lawsuit, plaintiff cannot establish the necessary causation to state a claim against State Street. State Street incorporates and refers the Court to the specific discussion in its brief in the Young Lawsuit on this issue.

### 5. Plaintiff Cannot Plead An ERISA Claim To Recover Better Investment Results Than The Stock Market

Just as in the Young Lawsuit, plaintiff is not entitled to look to State Street as an insurance policy against a investments that experience a down period. State Street incorporates and refers the Court to the specific discussion in its brief in the Young Lawsuit on this issue.

## IV. CONCLUSION

For all of the foregoing reasons, and as more specifically detailed in State Street's brief supporting dismissal of the parallel Young Lawsuit, defendant State Street respectfully requests that the Court dismiss the Brewer complaint with prejudice in its entirety.

Dated:  June 25, 2007                    Respectfully submitted,

STATE STREET BANK AND TRUST COMPANY

By its attorneys,

*[signature]*

WILBER H. BOIES, P.C.
NANCY G. ROSS
CHRIS C. SCHEITHAUER
McDermott Will & Emery LLP
227 W. Monroe Street
Chicago, IL  60606
312.984.7686

ANDREW B. KRATENSTEIN (AK-3910)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10173
212.547.5400
*Counsel for Defendant*
*State Street Bank and Trust Company*

ORC 417201-1.030790.0275