Art. V, 5.04(b)

be treated as separate if mandatorily disaggregated under regulations under Section 401(m) of the Code.

(c) <u>Notwithstanding any other provision of the Plan, Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Aggregate Contributions were allocated. Excess Aggregate Contributions are allocated to the Highly Compensated Employees with the largest amounts of After-Tax Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Aggregate Contribution have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Exces Aggregate Contributions.</u>

## ARTICLE VI

## INVESTMENT OF PARTICIPANT'S SAVINGS

### 6.01   Investment Options

(a) Amounts contributed to the trust fund on behalf of Participants pursuant to subsections (a) and (c) of Section 4.01 and subsection (a) of Section 5.01 shall be invested in the following investment options, in increments of 10%, as may be elected by the Participant:

    (i) Delphi Common Stock Fund; or

    (ii) the Mutual Funds; or

    (iii) The Promark Funds

    (iv) Socially Oriented Fund(s)

(b) A Participant's initial investment election shall remain in effect until changed by the Participant.

Art. VI, 6.01(b)

A Participant's investment election may be changed on any Business Day by providing appropriate direction to the party designated by the Administrator. Any change in the Participant's investment election shall be effective as of the Effective Date of Investment Option Election.

(c) Amounts contributed to the trust fund on behalf of a Participant as provided in subsection (c) of Section 4.01 and Sections 4.02 and 5.02 shall be invested in the same investment option(s) as elected by the Participant pursuant to subsection (a) of this Section 6.01; provided, however, that if contributions are not being made to the trust fund on behalf of such Participant pursuant to subsections (a) of Sections 4.01 and 5.01, the Participant will be required, prior to the contribution or transfer of amounts pursuant to subsection (c) of Section 4.01 and Sections 4.02 and 5.02, to make an election regarding the investment of such amount.

(d) A Participant may, by giving appropriate direction to the party designated by the Administrator, transfer assets being held in such Participant's Account from one investment option to another investment option, as follows:

(i) A transfer of assets may include all or any part of such assets in an investment option, except that the Mutual Funds have a minimum transfer amount of $250. If the value of the Mutual Fund is less than the minimum, all such assets in the Fund must be transferred.

(ii) A Participant may elect a transfer of assets on any Business Day.

(iii) Any election to transfer assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

25

Art. VI, 6.01(d)(iv)

(iv) Any appropriate election to transfer assets shall be processed as of the Effective Date of Transfer of Assets.

(v) Where excessive trading can undermine any of the Funds or exceed the available liquidity for any such Fund, Delphi reserves the right to modify or suspend transfer and withdrawal privileges on any of the Non-Mutual Funds, at any time, upon notice to Participants.

(vi) The Mutual Funds' provider reserves the right to modify or suspend transfer and withdrawal privileges on any of the Mutual Funds in those instances where excessive trading in any one of the Mutual Funds can undermine such Fund.

(vii) The Socially Oriented Funds provider reserves the right to modify or suspend transfer and withdrawal privileges on the Socially Oriented Funds in those instances where excessive trading in the Socially Oriented Funds can undermine such Fund.

## 6.02 Vesting

Each Participant shall be fully vested in the assets credited to the Participant's Account, and no portion of such Account shall be subject to forfeiture.

## 6.03 Withdrawals

(a) A Participant may, by providing appropriate direction to the party designated by the Administrator, withdraw assets in such Participant's Account subject to the following provisions:

(1) Prior to receiving a withdrawal of Deferred Assets, a Participant must withdraw all available After-Tax Assets including any earnings thereon.

(2) Deferred Assets may be withdrawn from the

Participant's Account, subject to the provisions outlined in subsection (a) of this Section 6.03, at any time after attaining age 59-1/2, or prior to age 59-1/2 because of <u>severance from</u> employment, death, Total and Permanent Disability, Financial Hardship<u>, or termination of the Plan</u>. Prior to receiving a withdrawal for Financial Hardship, a Participant previously must have taken all available asset distributions, withdrawals, and loans under all applicable plans maintained by the Corporation. The amount that may be withdrawn for a Financial Hardship shall be limited to the lesser of:

    (i)    the total amount of Deferred Savings in the Participant's Account as of the Effective Date of Withdrawal; or

    (ii)    the amount required to meet the Financial Hardship, including any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal.

    (b)    A Participant who has an outstanding loan(s) in accordance with Section 6.06 shall be permitted to make a withdrawal in accordance with subsection (a) of this Section 6.03.

    (c)    A Participant who withdraws any Deferred Assets for Financial Hardship in accordance with subsection (a) of this Section 6.03 will be suspended from accumulating further savings under this Plan, and all applicable plans maintained by the Corporation, for a period of 12 months immediately following such withdrawal.

    (d)    Any election to withdraw assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

Art. VI, 6.03(e)

(e) The Date of Valuation on any appropriate election to withdraw assets, pursuant to this Section 6.03, shall be the Effective Date of Withdrawal.

### 6.04 Distribution of Assets

(a) Settlement Upon Termination of Employment:

If a Participant terminates employment, such Participant may elect, by providing appropriate direction to the party designated by the Administrator, to (1) receive installment payments, (2) receive partial withdrawals, (3) receive a total settlement, or (4) defer continuously the distribution of assets in such Participant's Account. If such Participant fails to make an election, the Participant's Assets shall remain in the Participant's Account until the earlier of:

(1) the Participant's request for a settlement; or

(2) the Participant's attainment of age 70-1/2.

The Date of Valuation for any such installment payment, partial withdrawal, or total settlement shall be the Effective Date of Withdrawal.

With regard to installment payments, a Participant may elect to receive such payments each calendar month, calendar quarter, semi-annual, or on an annual basis.

Installment payments must be in whole dollar amounts with $100 established as the monthly minimum amount. A Participant may change or discontinue installment payments at any time by providing appropriate direction to the party designated by the Administrator.

If a terminated Participant does not make an election under this Section 6.04 prior to attaining age 70-1/2, distribution of assets in the Participant's Account will

28

begin not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2 and shall be made annually thereafter in accordance with Section 401(a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401(a)(9)-2 of the Income Tax Regulations.

(b) Attainment of Age 70-1/2

(i) If a Participant attains age 70-1/2 and such Participant has not terminated employment, a distribution of the Participant's assets will be made upon termination of employment pursuant to Section 6.04(a).

(ii) All distributions required under this subsection shall be determined and made in accordance with Section 401 (a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401 (a)(9)-2 of the Income Tax Regulations.

(c) Undeliverable Assets

In the event a distribution to a Participant or the Participant's beneficiary cannot be made pursuant to subsections (a) and (b) of this Section 6.04 and Section 8.02 because the identity or location of such Participant or beneficiary cannot be determined after reasonable efforts, and if the Participant's settlement remains undistributed for a period of one year from the Date of Valuation, the Administrator may direct that the settlement assets and earnings on such assets be returned to the trust fund and liquidated. All liability for payment thereof shall thereupon terminate; provided, however, in the event the identity or location of the Participant or beneficiary is determined subsequently, the value of the assets at the Date of Valuation shall be paid from the Plan to such person in a single sum. Any assets so liquidated shall be (1) paid to the Participant or

29

Art. VI, 6.04(c)

beneficiary when the identity or location is determined, or (2) applied to reduce reasonable expenses of administering the Plan.

## 6.05 Form of Distribution

(a) Upon withdrawal or settlement pursuant to Section 6.03 or subsections (a) and (b) of Section 6.04, a Participant may elect to receive any full shares equivalent to the Current Market Value of their assets invested in any of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund; provided, however, that prior to or coincident with the Effective Date of Withdrawal or Effective Date of Termination, the Participant may elect to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock on the Date of Valuation. All fractional units of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund worth less than one share of stock and all units of the Promark Funds, Socially Oriented Funds, and Mutual Funds will be paid out in cash.

(b) Upon settlement pursuant to subsection (c) of Section 6.04, a Participant shall receive cash-in-lieu of shares equivalent to the value of their assets liquidated in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock funds on the Date of Valuation.

(c) (1) In the event of the death of a Participant and upon receipt of all information necessary to determine the beneficiary or beneficiaries, a settlement

Art. VI, 6.05(c)(1)

of all assets in the deceased Participant's account shall be made to the beneficiary or beneficiaries designated pursuant to Section 8.02. The beneficiary or beneficiaries may elect to receive cash-in-lieu of shares equivalent to the value of the assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund in the deceased Participant's Account, based on the Current Market Value of such stock funds on the Date of Valuation. The Date of Valuation will be the Effective Date of Withdrawal. For purposes of making a settlement distribution to the beneficiary or beneficiaries, the Date of Valuation and the Effective Date of Withdrawal means the date on which the Administrator, or its delegate, determines the appropriate beneficiary or beneficiaries and is in receipt of all necessary information and directions to process the settlement.

(2) Notwithstanding the provision of the immediately preceding paragraph, (a) if a Participant's beneficiary is the Participant's surviving spouse, if the Participant has elected a distribution schedule under Section 6.04 (a) which had commenced by the Participant's date of death, the Participant's account shall continue to be paid to the surviving spouse pursuant to such schedule or, at the spouse's election at any time, in a lump sum, and (b) if distribution of the Participant's account has not commenced as of the Participant's date of death, the surviving spouse shall, for purposes of the distribution requirements and options under the Plan, be deemed a participant; except that the surviving spouse shall be deemed to attain age 70-1/2 on the date the Participant would have attained such age.

Additionally, in no event shall the surviving spouse be able to make contributions to the deceased Participant's Account.

31

### 6.06 Loans

(a) Subject to such rules as the Administrator may prescribe, a Participant, a former Employee, <u>and a surviving spouse,</u> may borrow from assets in such Participant's Account one time each calendar year, for any reason, an amount (when added to the outstanding balance of all other Plan loans) not more than the lesser of:

(1) $50,000 less the highest aggregate outstanding loan balance over the 12-month period preceding the Participant's application for loan; or

(2) one-half of the Current Market Value of all assets in the Participant's Account.

<u>The maximum amount available for a loan, to an active Participant, will be reduced by an amount equal to the outstanding principal and interest of any loan that has been defaulted.</u>

For purposes of the above limitation, all loans from all plans maintained by the Corporation [or its subsidiaries in accordance with Section 414(b), (c), or (m) of the Code] shall be aggregated.

(b) Loans shall be granted in whole dollar amounts with one thousand dollars ($1,000) established as the minimum amount of any loan.

(c) Loans shall be granted for a minimum period of 12 months, with additional increments of 12 months as the Participant may elect, to a maximum of five years (ten years in the event the loan is for the purchase or construction of the Participant's principal residence), provided a Participant may not elect a term which will result in repayments of less than $10 per pay period.

(d) Loans shall bear a rate of interest equal to the Prime Rate prevailing as of the last Business Day of the

calendar quarter immediately preceding the date the Participant gives appropriate direction for a loan to the party designated by the Administrator.

The interest rate shall remain the same throughout the term of the loan.

(e) For purposes of this Section 6.06, the Current Market Value of a Participant's assets shall be determined on the Effective Date of Loan.

(f) Each loan shall be evidenced by a written, or online acknowledged, Participant Loan Agreement that specifies:

    (1) the amount of the loan;

    (2) the term of the loan; and

    (3) the repayment schedule, showing payments to be made in a level amount which will fully amortize the loan over its duration.

By endorsing and either cashing or depositing the check representing the loan, a Participant shall acknowledge receipt of the Participant Loan Agreement and agree to the terms and conditions contained therein.

(g) Cash equal to the value of any loan granted shall be obtained by liquidating assets in the Participant's Account from investment options in which the Participant has assets, as the Participant may elect.

(h) Repayment of a loan shall be through weekly payroll deductions, except that if the Participant is not an active Employee, such repayments shall be made through monthly installment payments. Payments of principal and interest shall be applied to reduce the outstanding balance of a loan. Loan repayment amounts shall be allocated to the Participant's Account in the same investment option(s) as elected by the Participant

Art. VI, 6.06(h)

pursuant to subsection (a) of Section 6.01. A Participant shall be entitled to prepay the total outstanding loan balance or make partial prepayment at any time without penalty.

(i) A Participant with an outstanding loan who is placed on layoff shall be entitled to:

(1) make installment payments equivalent in value to the payments deducted previously from the Participant's paycheck; or

(2) suspend loan payments for a period of up to 12 months while on layoff, provided such period does not extend beyond the maximum loan term,

(j) A Participant with an outstanding loan who is placed on a disability leave of absence must make installment payments substantially equal to the payments deducted previously from the Participant's paycheck.

(k) No earnings shall accrue to the Participant's Account with respect to the outstanding balance of any loan.

(l) In the event an active Participant fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the Participant's loan will be defaulted and such Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. An active Participant will not be relieved of the liability to repay a loan that is classified as a deemed distribution.

(m) In the event a former Employee, surviving spouse, or a terminated Participant (including

34

Art. VI, 6.06(m)

termination due to death or retirement) fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the former Employee, surviving spouse, or terminated Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. A former Employee, surviving spouse, or terminated Participant will be relieved of the liability to repay a loan once such loan is classified as a deemed distribution.

(n) A Participant (or beneficiary) who, prior to such Participant's repayment of the total principal amount of and accrued interest on a loan, requests or receives a settlement of assets, shall be deemed to have elected a withdrawal, pursuant to Section 6.03, equal to the principal amount of and accrued interest on the loan as of the Effective Date of Withdrawal.

(o) Any appropriate direction given to borrow assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

(p) A Participant may have no more than five loans outstanding at any one time.

## ARTICLE VII

## TRUST FUND

### 7.01 Contributions to the Trustee

(a) All Deferred and After-Tax Savings under this Plan will be paid to the Trustee who shall invest all such amounts and earnings thereon.

35

Art. VII, 7.01(b)

(b)  Once the Deferred and After-Tax Savings are contributed to the Trustee by the Corporation, the Corporation shall be relieved of any further liability except as otherwise may be provided by The Employee Retirement Income Security Act of 1974.

### 7.02  Investment Options

The Trustee is to invest in the following:

(a)  Delphi Common Stock Funds

(i)  The Participants' contributions which are to be invested in the Delphi Common Stock Fund <u>and dividends received by the Trustee</u> shall be deposited in the Delphi Common Stock Fund no later than the 10th day of the month following the month such contributions or dividends are received by the Trustee and shall be invested by an investment manager, or managers, appointed by the Named Fiduciary, or its delegate, under a management agreement which specifies the terms and conditions of such Funds.

(ii)  Any administrative expenses incurred, including brokerage commissions or transfer taxes, as a result of offering the Delphi Common Stock Fund, shall be paid pursuant to Section 10.03.

(iii)  Shares of common stocks held in the Delphi Common Stock Fund acquired by the Trustee under the terms of this Plan shall be registered in the name of the Trustee, or its nominee. To the extent that it is consistent with ERISA and the Code, the Trustee shall vote and/or tender shares (including fractions), equivalent to the Current Market Value of the assets invested in the Delphi Common Stock Fund credited to each Participant, as instructed by the Participant but shall not vote shares for which such instructions are not received.

(iv)  If the Trustee has not received direction

Art. VII, 7.02(a)(iv)

from Participants which can be followed in accordance with ERISA and the Code, the Trustee shall, to the extent that it is consistent with ERISA and the Code, in its discretion, exercise or sell for the benefit of Participants any rights received from Delphi Corporation for the purchase of any additional shares of stock or other securities which Delphi may offer to its stockholders.

(v) In the event that outstanding shares of the Delphi Common Stock shall be changed in number or class by reason of split-ups, combinations, mergers, consolidations, or recapitalizations, or by reason of stock dividends, the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock which thereafter may be purchased under the Plan, both in the aggregate and as to any individual, and the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock then in the Account of any Participant shall be adjusted so as to reflect such change.

(b) Mutual Funds

The Participants' contributions invested in the Mutual Funds shall be invested by the Mutual Fund company appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Mutual Fund Prospectus which specifies the terms and conditions of such Funds.

(c) Promark Funds

The Participants' contributions invested in the Promark Funds shall be invested by an investment manager or managers appointed by the Named Fiduciary, or its delegate, in a Fund with specified terms and conditions.

(d) Socially Oriented Funds

The participants' contributions invested in the

Art. VII, 7.02(d)

Socially Oriented Funds shall be invested by a mutual fund company or companies appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Fund Prospectus which specifies the terms and conditions of such Funds.

### 7.03   EDS Common Stock ($0.01 Par Value)

(a)   The Trustee may hold in Participants' Accounts any EDS common stock distributed or to be distributed as a stock dividend. Any cash dividends received by the Trustee on EDS common stock shall be invested in the Promark Income Fund.

(b)   A Participant may elect to transfer assets held in the EDS Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the EDS Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

### 7.04   Raytheon Company Common Stock

(a)   The Trustee may hold in Participants' Accounts any Raytheon common stock distributed or to be distributed as a stock dividend. Any cash dividend received by the Trustee on Raytheon common stock shall be invested in the Promark Income Fund.

(b)   A participant may elect to transfer assets held in the Raytheon Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or

Art. VII, 7.04(c)

settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the Raytheon Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

**7.05   GM Common Stocks**

(a)   The Trustee may hold in Participants' Accounts any GM common stocks. Any cash dividends received by the Trustee on GM common stocks shall be invested in the Promark Income Fund.

(b)   A Participant may elect to transfer assets held in the GM Common Stock funds to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds to which such withdrawal or settlement applies, based on the Current Market Value of such stock funds on the Date of Valuation for the withdrawal or settlement.

# ARTICLE VIII

# OTHER PROVISIONS

**8.01   Non-Assignability**

Except as otherwise may be provided by Section 6.06, no right or interest of any Participant under this Plan or in the Participant's Account shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment,

Art. VIII, 8.01

pledge, bankruptcy, or in any other manner, except (1) in accord with provisions of a qualified domestic relations order as defined in IRC Section 414(p), (2) a Participant's voluntary assignment of an amount not in excess of 10% of a distribution from the Plan, and (3) further excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

### 8.02 Designation of Beneficiaries in Event of Death

(a) A Participant may file with the party designated by the Administrator a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant.

For a married Participant who dies, the entire balance of the Account shall be paid to the surviving spouse unless the written designation of beneficiary designating a person(s) other than the spouse with respect to part or all of the assets in the Account of the Participant includes the written consent of the spouse, witnessed by the Plan representative or a notary public. The written designation of beneficiary filed with the party designated by the Administrator may be changed or revoked at any time by the action of the Participant and, if necessary, the spouse. No designation or change of beneficiary will be effective until it is determined to be in order by the party designated by the Administrator, but when so determined it will be effective retroactively to the date of the instrument making the designation or change.

(b) In the event an unmarried Participant does not file a written designation of beneficiaries, such a Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or

Art. VIII, 8.02(b)

persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees, unless such Participant shall have assigned such life insurance, in which case the assets in the account shall be paid to the assignee.

(c) A beneficiary or beneficiaries will receive, subject to the provisions of Section 6.05, in the event of the Participant's death, the assets in the Participant's Account in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

### 8.03 Merger or Consolidation

In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan or program, each Participant in the Plan would, if the Plan then terminated, receive the assets in each such Participant's Account immediately after the merger, consolidation, or transfer which are at least equal in value to the assets each such Participant would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

### 8.04 Limitations on Contributions and Benefits

(a) General Provisions

For purposes of this Section:

(i) The term "Limitation Year" shall mean the Plan Year.

(ii) All defined benefit plans or programs of the Corporation will be treated as one defined benefit plan

41

Art. VIII, 8.04(a)(ii)

or program, and all defined contribution plans or programs will be treated as one defined contribution plan or program.

(iii) No contribution to this Plan may exceed the limits provided under Section 404 of the Code for current deductibility for income tax purposes.

(iv) Contributions made to the trust by the Corporation pursuant to subsection (c) of Section 4.01 shall be allocated to a Participant's Account within the current Limitation Year.

(v) For purposes of this Section, the term "Compensation" shall mean compensation as defined under Section 2.07 of the Plan.

(vi) The term "Annual Additions" shall mean the sum, for any Limitation Year, of Employee contributions, Corporation contributions, and forfeitures allocated to an Employee's account under all defined contribution plans.

(b) In no event shall contributions or benefits under this Plan exceed the limits of Section 415 of the Code and the regulations thereunder.

(c) For any Employee who participates under this Plan and any defined contribution plan or defined benefit plan of the Corporation, the sum of such Employee's Annual Additions shall not exceed the lesser of $40,000 (or such other amount prescribed by the Secretary of the Treasury applicable to the Limitation Year) or 100% of such Employee's Compensation for any Limitation Year.

(d) Any amounts elected to be contributed by an Employee pursuant to Section 5.01 of Article V which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee and, if necessary, any amounts elected to be

42

Art. VIII, 8.04(d)

contributed by an Employee pursuant to subsections (a) or (c) of Section 4.01 of Article IV which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee.

**8.05   Deferred Savings Limitation**

A Participant's annual Deferred Savings under this Plan and all similar contributions to other plans maintained by the Corporation may not exceed <u>the amount permitted under Federal Law</u> (as adjusted by the Secretary of the Treasury). <u>The following table represents the annual limits on Deferred Saving:</u>

| Annual Deferred Savings Limits | | | |
|---|---|---|---|
| Year | Under Age 50 | Catch-Up* Contributions | Age 50 or Over (Includes "Catch-Up") |
| 2003 | $12,000 | $2,000 | $14,000 |
| 2004 | $13,000 | $3,000 | $16,000 |
| 2005 | $14,000 | $4,000 | $18,000 |
| 2006 | $15,000 | $5,000 | $20,000 |

\* Catch-up contributions may be made for participants age 50 or over only if such participants are restricted by other limits described in this Supplemental Agreement.

In the event a Participant identifies, in writing, before March 2 following the end of the Plan Year an amount of Deferred Savings as exceeding this limitation, as applied to this Plan and all other plans in which such Employee participated, such amounts will be refunded to the Participant no later than April 15 following the receipt of such written notice from the Participant. In the event the Administrator identifies an amount in excess of the limitation, the Participant will be deemed to have notified the Administrator, and such amount will be refunded to the Participant.

43