# ASEC Manufacturing Savings Plan

(Amended and Restated
Effective as of May 28, 1999)

# Contents

| | **Article 1. Purpose and Effective Date** | **1** |
|---|---|---|
| 1.1 | Amendment and Restatement of the Plan | 1 |
| 1.2 | Applicability of the Plan | 1 |
| 1.3 | Purpose | 1 |
| | **Article 2. Definitions** | **2** |
| 2.1 | Definitions | 2 |
| 2.2 | Gender and Number | 14 |
| | **Article 3. Code Limitations on Participant Contributions, Employer Contributions, and Annual Additions** | **15** |
| 3.1 | Code Limitations on Participant Contributions, Employer Contributions, and Annual Additions | 15 |
| | **Article 4. Administration** | **16** |
| 4.1 | Administration | 16 |
| 4.2 | Benefit Claims | 16 |
| 4.3 | Benefit Claim Appeals | 17 |
| | **Article 5. Eligibility and Participation** | **18** |
| 5.1 | Eligibility and Participation | 18 |
| | **Article 6. Participant Contributions** | **19** |
| 6.1 | Rate of Contribution | 19 |
| 6.2 | Revision, Suspension, or Resumption of Participant Contributions | 19 |
| 6.3 | Rollover Contributions | 20 |
| 6.4 | Transfers from Other Plans | 20 |
| 6.5 | Additional Contributions | 21 |
| | **Article 7. Employer Contributions** | **22** |
| 7.1 | Rate of Employer Contributions | 22 |
| 7.2 | Payment | 22 |

8110/S-ASEC.doc97/05Ld 11/30/1999

| | **Article 8. Trustee** | **23** |
|------|------|------|
| 8.1 | Trustee | 23 |
| | **Article 9. Investment of Contributions** | **24** |
| 9.1 | Investment of Contributions | 24 |
| 9.2 | Reinvestment of Income | 26 |
| 9.3 | Purchase of Delphi Common Stock | 26 |
| 9.4 | Dividends Paid with Respect to Delphi Common Stock | 26 |
| | **Article 10. Participant's Account and Subaccounts** | **28** |
| 10.1 | Participant's Account and Subaccounts | 28 |
| 10.2 | Valuation of Account | 28 |
| 10.3 | Crediting and Charging Accounts | 28 |
| 10.4 | Separate Accounting for After-Tax Contributions | 28 |
| | **Article 11. Vesting** | **29** |
| 11.1 | Participant Contributions and Rollover Contributions | 29 |
| 11.2 | Employer Contributions | 29 |
| 11.3 | Forfeitures | 29 |
| 11.4 | Rehired Participants | 29 |
| 11.5 | No Divestment for Cause | 30 |
| | **Article 12. Distributions** | **31** |
| 12.1 | Amount of Benefits | 31 |
| 12.2 | Methods of Payment | 31 |
| 12.3 | Cash-Outs | 34 |
| 12.4 | Minimum Distributions | 34 |
| 12.5 | Mode of Distribution | 35 |
| 12.6 | Order of Distributions | 36 |
| 12.7 | Distribution Procedures | 36 |
| 12.8 | Rollover Distributions | 37 |
| 12.9 | Waiver of 30-Day Notice Period | 38 |
| | **Article 13. Withdrawals** | **39** |
| 13.1 | Withdrawals of Participant Contributions, Employer Contributions, and IRA Account | 39 |
| 13.2 | Special Withdrawal Rules | 42 |
| 13.3 | Withdrawal Procedures | 42 |

8110/S-ASEC.doc97/05Ld 11/30/1999

**Article 14. Participant Loans**                                               **44**
14.1   Eligibility for Loans                                                      44
14.2   Receipt of Loans                                                          44
14.3   Amount of Loan                                                            44
14.4   Terms of Loan                                                             44
14.5   Source of Loan Proceeds                                                   46
14.6   Repayment of Loan                                                         47
14.7   Loan Security                                                             47

**Article 15. Amendment, Discontinuance, or Termination
of the Plan**                                                                   **48**
15.1   Amendment, Discontinuance, or Termination of the Plan                     48

**Article 16. General Provisions**                                              **50**
16.1   Administrative Costs                                                       50
16.2   Communication to Eligible Employees                                        50
16.3   Assignment or Attachment                                                   50
16.4   Employment                                                                 50
16.5   Legal Interpretation                                                       50
16.6   Fiduciary Capacities                                                       51
16.7   Qualified Domestic Relations Orders                                        51
16.8   Unclaimed Benefits                                                         51
16.9   Limitation or Suspension of Transaction and Limitation of Daily
       Securities Trading                                                         51
16.10  Participant Directed Accounts                                              51

**Article 17. Custody, Registration, and Voting of Delphi
Common Stock; Tender Offer Provisions**                                         **53**
17.1   Custody and Voting of Delphi Common Stock                                  53
17.2   Tender or Exchange of Delphi Common Stock                                  53

**Article 18. Top-Heavy Plan Provisions**                                       **55**
18.1   Determination Date                                                         55
18.2   Top-Heavy Plan                                                             55
18.3   Key Employee                                                               56
18.4   Non-Key Employee                                                           57
18.5   Top-Heavy Group                                                            57
18.6   Minimum Contributions and Benefits for Top-Heavy Plans                     57
18.7   Top-Heavy Average Compensation                                            58

8110/S-ASEC.doc97/05Ld 11/30/1999

| 18.8 | Top-Heavy Years of Service | 58 |
| 18.9 | Top-Heavy Group Minimum Contribution | 58 |
| 18.10 | Minimum Vesting Requirements | 59 |
| 18.11 | Adjustments in Section 415 Limits for Top-Heavy Plans | 60 |

**Appendix A. Code Limitations on Participant Contributions and Employer Contributions** — **62**

| A.1 | Limitations on Participant Before-Tax Contributions | 62 |
| A.2 | Limitations on Participant After-Tax Contributions and Employer Contributions | 63 |
| A.3 | Limitation on Annual Additions | 66 |

8110/S-ASEC.doc97/05Ld 11/30/1999

# Article 1. Purpose and Effective Date

## 1.1 Amendment and Restatement of the Plan

ASEC Manufacturing ("the Company") has adopted a defined contribution savings plan to be known as the ASEC Manufacturing Savings Plan ("the Plan"). The Plan was initially adopted effective as of January 1, 1996.

Effective as of May 28, 1999, the Plan is hereby amended and restated in order to reflect changes in the ownership of the Company, to reflect changes in the law and regulatory guidance issued since the adoption of the Plan, and to enact other changes to the Plan deemed desirable by the Company.

The Plan shall continue to be known as the "ASEC Manufacturing Savings Plan." The restatement of the Plan is generally effective as of May 28, 1999. However, certain provisions of the restatement of the Plan shall have different effective dates; such different dates are specifically noted herein.

## 1.2 Applicability of the Plan

Except as specifically provided herein, the provisions of the Plan as amended and restated shall apply only to Eligible Employees (or Beneficiaries of Eligible Employees) who were employed by an Employer on or after May 28, 1999. Any Eligible Employee whose employment terminated prior to May 28, 1999 (or the Beneficiary of such an Eligible Employee) shall have his rights determined under the provisions of the Plan as in effect when his employment relationship terminated.

## 1.3 Purpose

The purpose of the Plan is to promote, in the manner set forth hereinafter, the future economic welfare of the Employees, to develop in those Employees an increased interest in the Employer's successful operation, and to encourage Employee savings for retirement. It is intended that this Plan qualify as a profit sharing plan qualified under sections 401(a) and 401(k) of the Internal Revenue Code. The Plan shall acquire and hold Delphi Automotive Systems Common Stock as "qualifying employer securities," as defined in section 407(d)(5) of ERISA, to the extent and in the amount deemed appropriate by the Company.

# Article 2. Definitions

## 2.1 Definitions

As used herein and in Appendix A, unless otherwise clearly or necessarily indicated by the context:

(a)     **"Account"** means an account established and maintained for a Participant in accordance with Article 10. Subaccounts shall be maintained within each Account to reflect the value of After-Tax Contributions, Before-Tax Contributions, Employer Contributions, and, where applicable, a Participant's IRA Account and Rollover Contributions. The Plan Administrator shall allocate to each subaccount the attributable investment gains and losses and expenses, and shall adjust such subaccount for contributions, withdrawals, distributions, and other credits and charges.

(b)     **"Actual Deferral Percentage"** with respect to any group of Eligible Employees or Former Employees for a Plan Year shall mean the average of the ratio (calculated separately for each Eligible Employee or Former Employee in the group) of—

(1)     the amount of Before-Tax Contributions paid to the trust on behalf of each such Eligible Employee or Former Employee for such Plan Year, to

(2)     the Eligible Employee's or Former Employee's Gross Compensation for such Plan Year.

(c)     **"Affiliated Company"** means—

(1)     any trade or business, whether or not incorporated, which is under the common control of the Company as determined under section 414(c) of the Code;

(2)     any member of an affiliated service group, as defined in section 414(m) of the Code, which includes the Company; and

(3)     any trade or business which is otherwise aggregated with the Company under section 414(o) of the Code whether or not incorporated.

With respect to the limitation on annual additions set forth in section A.3 of Appendix A to the Plan, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent," wherever such latter phrase appears in section 1563(a)(1) of the Code.

(d)     **"After-Tax Contributions"** means Participant Contributions which are made on an after-tax basis in accordance with Article 6.

(e)   **"Base Pay"** means base rate of pay (including amounts paid for that period of time after termination of the employer-employee relationship during which a Former Employee continues on the payroll of the Employer or an Affiliated Company on account of the employment relationship which previously existed (for example, pursuant to a severance pay plan or vacation accrual)) prior to any contribution to the Plan (including nontaxable compensation received through a cafeteria plan under section 125 of the Code to the extent such compensation constitutes a reduction in base rate of pay). Base Pay does not include commissions, shift differentials, overtime, or other premium pay, bonus, incentive, or other extra compensation, or amounts deferred under any nonqualified plan of deferred compensation. In no event shall the amount of Base Pay taken into account under the Plan exceed $150,000 as adjusted by the Commissioner of Internal Revenue for increases in the cost of living and calculated pursuant to section 401(a)(17) of the Code and the regulations thereunder.

(f)   **"Before-Tax Contributions"** means Participant Contributions which are made on a pretax basis in accordance with Article 6.

(g)   **"Beneficiary"** means the Participant's Spouse, if living, or such other person, persons, or entity last designated by the Participant (with the consent of the Participant's Spouse given as provided herein, if such Spouse is living at the time of the designation) to receive distribution of the Participant's Account upon the Participant's death. If no such valid designation is in effect at the time of the Participant's death, or if no person, persons, or entity so designated shall survive the Participant, the Participant's surviving spouse, if any, shall be deemed the Beneficiary; otherwise the Beneficiary shall be the estate of the Participant. A Spouse may consent to the designation by the Participant of one or more Beneficiaries other than such Spouse to receive benefits in the event of the death of the Participant. Any such consent shall be in writing, and shall—

   (1)   acknowledge the effect of such consent;

   (2)   be witnessed by a notary public;

   (3)   specify that the Beneficiary designation may not be changed without spousal consent given in accordance with this section 2.1(g); and

   (4)   be effective only with respect to the Spouse consenting to the designation.

A designation or change of Beneficiary must be in writing on forms supplied by the Plan Administrator and any change of Beneficiary will not become effective until such change of Beneficiary is filed with the Plan Administrator whether or not the Participant is alive at the time of such filing; provided that any such change will not be effective with respect to any payments made from the Plan in accordance with the

Participant's last designation and prior to the time such change was received by the Plan Administrator.

(h)     **"Code"** means the Internal Revenue Code of 1986 as amended.

(i)     **"Company"** means ASEC Manufacturing, a wholly-owned subsidiary of Delphi.

(j)     **"Contribution Percentage"** with respect to any specified group of Eligible Employees or Former Employees for a Plan Year shall mean the average of the ratios (calculated separately for each Eligible Employee or Former Employee in the group) of—

   (1)   the amount of Employer Contributions and After-Tax Contributions, plus the amount of any Before-Tax Contributions recharacterized pursuant to section A.1(b) of Appendix A, paid to the trust on behalf of each such Eligible Employee or Former Employee for such Plan Year, to

   (2)   the Eligible Employee's or Former Employee's Gross Compensation for such Plan Year.

(k)     **"Delphi"** means Delphi Automotive Systems Corporation.

(l)     **"Delphi Common Stock"** means the common stock of Delphi Automotive Systems Corporation.

(m)     **"Disability"** means a medically determinable physical or mental impairment resulting in the complete inability of an Employee, who is not engaged in any occupation for wage or profit, to perform any and every duty of his or her occupation, as determined in the same manner as under the Employer's long-term disability plan.

(n)     **"Domestic Relations Order"** means any judgment, decree, or order (including approval of a property settlement agreement) which relates to the provisions of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a Participant and is made pursuant to a state domestic relations law (including a community property law).

(o)     **"Early Retirement"** means "retirement" or "early retirement" within the meaning of any defined benefit retirement plan maintained by the Company and in which a Participant participates.

(p)     **"Eligible Employee"** means an Employee, other than a person treated as an Employee under section 414(n) of the Code, who is eligible to participate in the Plan under Article 5.

(q)     **"Eligible Retirement Plan"** means a plan as defined in section 402(c)(8)(B) of the Code.

(r)     **"Eligible Rollover Distribution"** means a distribution as defined in section 402(f)(2)(A) of the Code.

(s)     **"Employee"** means any person with whom the Employer or an Affiliated Company maintains an employer-employee relationship under general principles of law. A "Full-Time Employee" means any Employee who is classified in the employment records of the Employer or an Affiliated Company as a full-time employee. A "Part-Time Employee" means any Employee who is classified in the employment records of the Employer or an Affiliated Company as a part-time employee.

Employee does not include—

(1)     a person who is retained as an independent contractor or a consultant;

(2)     a person who serves only as a director of the Company or an Affiliate;

(3)     an individual whose services to the Company or an Affiliate are rendered pursuant to the terms of a contract with an employment or leasing agency that is not an Affiliate;

(4)     a person whose services are rendered pursuant to written arrangements which expressly recite that the individual is not eligible for participation in the Plan; or

(5)     a person who is a "leased employee" of an Employer, within the meaning of Code section 414(n).

A person who is not designated as an "employee" in the Employer's employment records during a particular period of time, including a person designated as an "independent contractor," is not considered to be an Employee during that period of time. Such a person shall not be considered an "Employee" for purposes of this Plan, even if a determination is made by a government agency or court that such person is an employee for any other purposes; provided, however, that such a person may be considered an "Employee" if the Employer designates such person as an "Employee" for purposes of the Plan. If such a designation is made, it shall be applied prospectively only, unless the Employer specifically provides otherwise.

(t)     **"Employer"** means the Company and each Affiliated Company with employees participating in the Plan.

(u)     **"Employer Contributions"** means amounts contributed by the Employer pursuant to Article 7 and credits thereto arising from forfeitures pursuant to section 11.3.

(v)   **"Employment Commencement Date"** means the date on which an Employee first performs an Hour of Service.

(w)   **"Enrollment Date"** means the date by which the Employee's written election to participate is received and processed by the Employer and, which coincides with or immediately follows the date on which an Employee satisfies the requirements of Article 5 of the Plan.

(x)   **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

(y)   **"Excess Aggregate Contributions"** shall mean, with respect to each Highly Compensated Eligible Employee or Former Employee, the amount equal to the total Employer Contributions made on his or her behalf and his or her After-Tax Contributions (including Before-Tax Contributions which are recharacterized pursuant to section A.2(b) of Appendix A) determined prior to the application of the leveling procedure described below, minus the amount of such contributions allowable after the application of the leveling procedure described below. Under the leveling procedure, the contribution amount of the Highly Compensated Eligible Employee or Former Employee with the highest such amount is reduced to the extent required to enable the limitations of section A.2(a) of Appendix A to be satisfied, or, if it results in a lower reduction, to the extent required to cause such Participant's contribution amount to equal that of the Highly Compensated Eligible Employee or Former Employee with the next highest contribution amount. This leveling procedure is repeated until the limitations of section A.2(a) of Appendix A are satisfied. In no case shall the amount of Excess Aggregate Contributions with respect to any Highly Compensated Eligible Employee or Former Employee exceed the After-Tax Contributions and Employer Contributions made on behalf of such Eligible Employee or Former Employee in any Plan Year. Notwithstanding the restatement date set out in Article 1 of this Plan, the provisions for determining Excess Aggregate Contributions set forth in this section 2.1(y) shall apply for Plan Years beginning after December 31, 1996.

(z)   **"Excess Before-Tax Contributions"** shall mean, with respect to each Highly Compensated Eligible Employee or Former Employee, the amount equal to the Before-Tax Contributions made on behalf of such Eligible Employee or Former Employee (determined after the application of Appendix A and prior to the application of the leveling procedure described below) minus the amount of such contribution allowable after application of Appendix A and after the leveling procedure described below. Under the leveling procedure, the Before-Tax Contributions of the Highly Compensated Eligible Employee or Former Employee with the highest such amount shall be reduced to the extent required to enable the limitation of section A.1(b) of Appendix A to be satisfied, or, if it results in a lower

reduction, to the extent required to cause such Highly Compensated Eligible Employee's or Former Employee's Actual Deferral Percentage to equal the Before-Tax Contribution amount of the Highly Compensated Eligible Employee or Former Employee with the next highest Before-Tax Contribution amount. This leveling procedure shall be repeated until the limitations of section A.1(b) of Appendix A are satisfied. In no case shall the amount of Excess Before-Tax Contributions with respect to any Highly Compensated Eligible Employee or Former Employee exceed the Before-Tax Contributions made on behalf of such Eligible Employee or Former Employee in any Plan Year. Notwithstanding the restatement date set out in Article 1 of this Plan, the provisions for determining Excess Before Tax Contributions set forth in this section 2.1(z) shall apply for Plan Years beginning after December 31, 1996.

(aa)  **"Former Employee"** means a former Employee who continues to receive Base Pay from the Employer or an Affiliated Company for a period of time after termination of the employer-employee relationship.

(bb)  **"Fund"** means one of the investment funds described in Article 9.

(cc)  **"Gross Compensation"** means "compensation" as defined in section A.3(7) of Appendix A, plus any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includable in the gross income of an Employee under sections 125 or 402(a)(8) of the Code, and expressly includes Base Pay paid to a Former Employee. In no event shall the amount of Gross Compensation taken into account under the Plan exceed $150,000 as adjusted by the Commissioner of Internal Revenue for increases in the cost of living and calculated pursuant to section 401(a)(17) of the Code and the regulations thereunder.

(dd)  **"Highly Compensated Eligible Employee or Former Employee"** shall mean an Eligible Employee or Former Employee who during the Plan Year is a highly compensated employee within the meaning of section 414(q) of the Code and any regulation, notice, or other guidance issued by the Internal Revenue Service thereunder; subject to any determination made by the Plan Administrator on the basis of any elective provision permitted under such regulation, notice, or other guidance.

(ee)  **"Hours of Service"** means, in the case of a Full-Time Employee or a Former Employee, each hour for which such an Employee or Former Employee receives Base Pay from the Employer or Affiliated Company.

In the case of a Part-Time Employee, "Hours of Service" means—

(1)  each hour for which such an Employee is paid or entitled to payment for the performance of duties for the Employer or an Affiliated Company;

(2)    each hour for which such an Employee is paid or entitled to payment by the Employer or an Affiliated Company on account of a period of time during which no duties are performed (irrespective of whether or not the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, or military duty, or a leave of absence; and

(3)    each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or an Affiliated Company.

Hours of Service shall be credited to the period in which earned, regardless of when determined or awarded. Notwithstanding the foregoing, except as provided in the following sentence—

(A)    not more than 501 Hours of Service shall be credited to a Part-Time Employee on account of any single continuous period during which such Employee performs no duties for the Employer or an Affiliated Company;

(B)    no credit shall be granted for any period with respect to which such an Employee receives payment or is entitled to payment under a plan maintained solely for the purpose of complying with applicable workmen's compensation or disability insurance law; and

(C)    no credit shall be granted for a payment which solely reimburses such an Employee for medical or medically related expenses incurred by the Employee.

Each week of absence from military service in the armed forces of the United States from which service the Employee, whether a Part-Time Employee or Full-Time Employee, returns to the Employer or an Affiliated Company within the period during which he or she has legally protected reemployment rights shall count as a number of Hours of Service equal to the number of Hours of Service that would have been credited to the Employee with respect to the Employee's customary week of employment during the month immediately preceding the date on which absence for military service commenced. Service rendered at overtime or other premium rates shall be credited at the rate of one Hour of Service for each hour for which pay is earned, regardless of the rate of compensation in effect with respect to such hour.

Hours of Service under this Plan shall include all hours of service credited to the Employee in any plan qualified under section 401(k) of the Code and maintained by AlliedSignal Inc. or any member of the controlled group of AlliedSignal Inc.; provided, that—

(i)    the individual becomes an Employee by being transferred directly from AlliedSignal Inc. or such controlled group member to an Employer; and

(ii)  all assets of the individual, if any, in such plan maintained by AlliedSignal Inc. or its controlled group members, are transferred to this Plan pursuant to section 6.4.

The controlled group of AlliedSignal Inc. shall include any member of a controlled group of corporations within the meaning of section 414(b) of the Code of which AlliedSignal Inc. is a member, any unincorporated trade or business which is under common control within the meaning of section 414(c) of the Code with AlliedSignal Inc., any member of an "affiliated service group," within the meaning of section 414(m) of the Code, of which AlliedSignal Inc. is a member and any trade or business which is otherwise aggregated with AlliedSignal Inc. under section 414(o) of the Code.

(ff)  **"IRA Account"** means the separate Plan account in which IRA contributions by former participants in the SSP, and investment results thereof, are held.

(gg)  **"Loan Election Date"** means the first Valuation Date coinciding with or immediately following the date on which the Participant makes a request to receive a loan pursuant to Article 14.

(hh)  **"Matched Contribution"** means the portion of Participant Contributions (up to 8 percent of a Participant's Base Pay), which is matched by Employer Contributions pursuant to Article 7.

(ii)  **"Month of Participation"** means the month which includes a Participant's Enrollment Date and each month thereafter in which a Participant remains a Participant in the Plan. Months of Participation shall include Months of Participation in other tax qualified savings plans merged into the Plan or from which a direct trustee to trustee transfer of assets to this Plan has been made.

(jj)  **"Month of Service"** means each month in which an Employee or Former Employee completes an Hour of Service.

(kk)  **"One-Year Period of Severance"** means a 12-consecutive-month period beginning on the Severance from Service Date of the Employee and ending on the first anniversary of such date, provided that a reemployed Employee fails to perform an Hour of Service during such 12-consecutive-month period.

(ll)  **"Participant"** means—

(1)  an Eligible Employee who elects to participate in the Plan pursuant to Article 5; and

(2)   even before becoming a Participant, for purposes of section 9.1 and Articles 10, 12, 13, and 14, any Employee who makes a Rollover Contribution under section 6.3 or has assets transferred to the Plan pursuant to section 6.4.

An Employee or Former Employee remains a Participant in the Plan until the entire amount which he or she is entitled to receive under the Plan is distributed, provided; however, that if, following such distribution of a Participant's entire account, a Participant rejoins the Plan, the Participant will be credited with the Months of Participation, for all purposes under the Plan, which he or she had accumulated prior to such distribution.

(mm)   **"Participant Contributions"** means amounts contributed by a Participant pursuant to Article 6, whether as After-Tax Contributions or Before-Tax Contributions.

(nn)   **"Pay Period"** means the period on which Base Pay is calculated and paid.

(oo)   **"Participating Unit"** means salaried and/or hourly employees of the Company or an Affiliated Company, which have been designated by the Company as participating in the Plan.

(pp)   **"Period of Service"** means a period of service commencing on an Employee's Employment Commencement Date or Reemployment Commencement Date, whichever is applicable, and ending on his or her Severance from Service Date. If an Employee quits, retires, or is discharged, and then completes an Hour of Service prior to the first anniversary of the reemployed Employee's Severance from Service Date, the period between the reemployed Employee's Severance from Service Date and the date the reemployed Employee performs an Hour of Service shall be included as a Period of Service, except that if the Employee is first absent from service for a reason other than quit, retirement, discharge, or death, and then quits, is discharged, or retires, the period of time during which the Employee may return and receive credit begins on the Severance from Service Date and ends one year after the first day of absence. This method of crediting service is referred to as the "Elapsed Time Method."

If an Employee shall have been absent from the service of the Employer or an Affiliated Company because of service in the armed forces of the United States and if he or she shall have returned to the service of the Employer or an Affiliated Company within the period during which he or she has legally protected reemployment rights, such absence shall be considered a Period of Service.

Period of Service under this Plan shall include all periods of service credited to the Employee in any plan qualified under section 401(k) of the Code and maintained by AlliedSignal Inc. or any member of the controlled group of AlliedSignal Inc.; provided, that—

(1)    the individual becomes an Employee by being transferred directly from AlliedSignal Inc. or such controlled group member to an Employer; and

(2)    all assets of the individual, if any, in such plan maintained by AlliedSignal Inc. or its controlled group members, are transferred to this Plan pursuant to section 6.4.

The controlled group of AlliedSignal Inc. shall include any member of a controlled group of corporations within the meaning of section 414(b) of the Code of which AlliedSignal Inc. is a member; any unincorporated trade or business which is under common control within the meaning of section 414(c) of the Code with AlliedSignal Inc.; any member of an "affiliated service group" (within the meaning of section 414(m) of the Code) of which AlliedSignal Inc. is a member; and any trade or business which is otherwise aggregated with AlliedSignal Inc. under section 414(o) of the Code.

(qq)    **"Period of Severance"** shall mean the period of time commencing on the Employee's Severance from Service Date and ending on the date on which the reemployed Employee performs an Hour of Service.

(rr)    **"Plan"** means this ASEC Manufacturing Savings Plan.

(ss)    **"Plan Administrator"** means the Company.

(tt)    **"Plan Year"** means the 12-month period ending on December 31.

(uu)    **"Qualified Domestic Relations Order"** means a Domestic Relations Order which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a Participant under the Plan and with respect to which the following requirements are met. A Qualified Domestic Relations Order must clearly specify—

(1)    the name and the last known mailing address (if any) of the Participant and the name and mailing address of each alternate payee covered by the order;

(2)    the amount or percentage of the Participant's benefits to be paid by the Plan to each such alternate payee, or the manner in which such amount or percentage is to be determined;

(3)    the number of payments or period to which such order applies; and

(4)    each plan to which the order applies.

Subject to section 206(d)(3)(E) of ERISA, a Qualified Domestic Relations Order cannot require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan. A Qualified Domestic Relations Order cannot

require the Plan to provide increased benefits (based on actuarial value), and it cannot require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a Qualified Domestic Relations Order.

(vv) **"Reduction-in-Force"** means the termination of a Participant's employment because of a manpower reduction or reorganization by the Employer.

(ww) **"Reemployment Commencement Date"** means the first date, following a Period of Severance which is not required pursuant to the provisions of section 2.1(pp) to be treated as a Period of Service, on which a reemployed Employee performs an Hour of Service.

(xx) **"Regulations"** means regulations adopted pursuant to Article 4.

(yy) **"Retirement"** means "retirement" within the meaning of any defined benefit retirement plan maintained by the Company and in which a Participant participates, including Early Retirement.

(zz) **"Retirement Plan"** means—

    (1) any qualified plan described in section 401(a) of the Code;

    (2) any annuity plan or annuity contract described in sections 403(a) or 403(b) of the Code; and

    (3) any individual retirement account, or individual retirement annuity described in sections 408(a) or 408(b) of the Code.

(aaa) **"Rollover Contribution"** means a contribution by an Employee to the Plan of all or part of the amounts distributed to the Employee from a Retirement Plan or a contribution by a Retirement Plan directly to the Plan pursuant to section 401(a)(31) of the Code, but only if such contribution qualified as an amount which may be rolled over pursuant to sections 402(c), 403(a)(4), or 408(d)(3) of the Code.

(bbb) **"Severance from Service Date"** means the day on which occurs the earlier of—

    (1) the date on which an Employee quits, retires, is discharged, or dies; or

    (2) the first anniversary of the date on which an Employee is absent from service (with or without pay) with an Employer or Affiliated Company for reasons other than those described in (1) above, such as vacation, holiday, sickness, Disability, leave of absence, or layoff.

For purposes of paragraph (1) of this section 2.1(bbb), the date on which an Employee "quits, retires, is discharged or dies" shall be considered to be the last day

of that period of time during which a Former Employee continues to receive Base Pay from the Employer or an Affiliated Company after termination of the employer-employee relationship.

(ccc) **"Spouse"** means the person to whom a Participant is legally married under the laws of the state of the Participant's residence on the date in question.

(ddd) **"SSP"** shall mean The Signal Companies, Inc. Savings and Stock Purchase Plan, as such plan existed immediately prior to its merger into the AlliedSignal Savings Plan.

(eee) **"Trustee"** means the trustee or trustees selected by the Company and acting under the trust agreement(s) established in accordance with Article 8.

(fff) **"Unmatched Contributions"** means the portion of Participant Contributions which is not matched by an Employer Contributions pursuant to Article 7.

(ggg) **"Valuation Date"** means each day on which the New York Stock Exchange opens for trading.

(hhh) **"Vested Portion"** means that portion of his or her Account in which the Participant has a vested interest as determined under Article 11.

(iii) **"Year of Eligibility Service"** shall mean in the case of a Part-Time Employee, a Year of Eligibility Service shall be measured on the basis of Hours of Service. For purposes of this paragraph, "computation period" shall mean a 12-consecutive-month period, and "one-year break in service" shall mean any computation period in which a Part-Time Employee completes less than 501 Hours of Service. The completion of 1,000 Hours of Service in a computation period shall be treated as a Year of Eligibility Service. The determination of whether 1,000 Hours of Service has been completed in a computation period shall be made only at the end of any such computation period. The initial computation period shall begin on the Part-Time Employee's Employment Commencement Date. The computation periods shall continue to be 12-month periods which begin on the anniversary of the Part-Time Employee's Employment Commencement Date unless the Part-Time Employee has a one-year break in service following a computation period in which such Employee completes more than 500 Hours of Service. If the Part-Time Employee has a one-year break in service following a computation period in which such Employee completes more than 500 Hours of Service, a new computation period shall be measured from the first day on which the Employee is credited with an Hour of Service following the end of the last computation period in which the one-year break in service occurred. The commencement date of the Part-Time Employee's computation period shall be redetermined in the above-described fashion each time the Part-Time Employee has a one-year break in service following a computation period in which such Employee completes more than 500 Hours of Service;

otherwise it shall continue to be based on the anniversary date of the preceding computation period.

(jjj)    **"Year of Vesting Service"** means any completed 12-month Period of Service irrespective of the number of Hours of Service actually worked during such period. Nonsuccessive Periods of Service shall be aggregated and less than whole year Periods of Service (whether or not consecutive) shall be aggregated on the basis that 12 Months of Service equals a Year of Vesting Service. All Years of Vesting Service shall be taken into account under the Plan except that, in the case of a Participant who has incurred five consecutive One-Year Periods of Severance, Years of Vesting Service after such five consecutive One-Year Periods of Severance shall not be taken into account for purposes of determine the Vested Portion of his or her Account which accrued before such five consecutive One-Year Periods of Severance.

## 2.2 Gender and Number

Except when otherwise indicated by the context, any masculine terminology herein shall also include the feminine and neuter, and the definition of any term herein in the singular may also include the plural.

# Article 3. Code Limitations on Participant Contributions, Employer Contributions, and Annual Additions

## 3.1 Code Limitations on Participant Contributions, Employer Contributions, and Annual Additions

Limitations imposed by the Code upon the operation of the Plan in respect of permissible Participant Contributions, Employer Contributions, and annual additions to Participant Accounts are set forth in Appendix A to the Plan.

# Article 4. Administration

## 4.1 Administration

The Company shall be the Plan Administrator and a "named fiduciary" of the Plan within the meaning of ERISA. The Company shall have the authority to appoint one or more other named fiduciaries of the Plan. The Company and any other named fiduciary appointed by the Company shall have the authority to designate persons, other than named fiduciaries, to carry out fiduciary responsibilities under the Plan pursuant to section 405(c)(1)(B) of ERISA. The Company shall have full discretionary authority to manage and control the operation and administration of the Plan, including the power—

(a)    to interpret provisions of the Plan, and promulgate Regulations thereunder;

(b)    to enter into agreements with Trustees to provide for the investment of Plan assets;

(c)    to appoint investment managers to direct Trustees and to itself direct such Trustees; and

(d)    to take such other actions as it may find necessary to implement the provisions of the Plan, consistent with the purpose and intention set forth in Article 1.

The Plan Administrator may retain attorneys, consultants, accountants, or other persons (who may be employees of the Plan Administrator) to render advice and assistance as it shall determine to be necessary to effect the proper discharge of any duty for which it is responsible. The Plan Administrator and its officers and directors, if any, shall be entitled to rely upon the advice and opinions of any such persons. All actions taken and all interpretations and determinations made by the Plan Administrator shall be final and binding upon the Employees, Participants, and Beneficiaries.

## 4.2 Benefit Claims

All claims for benefit payments under this Plan shall be submitted in writing by Participants and Beneficiaries to the Plan Administrator to determine benefit eligibility. The Plan Administrator, or the person authorized by the Plan Administrator to consider and decide such claims, shall notify the Participant or Beneficiary in writing within 60 days after receipt as to whether the claim has been granted or denied. In the event the claim is denied, such notice shall—

(a)    set forth the specific reason or reasons for denial;

(b)    make reference to the pertinent Plan provisions on which the denial is based;

(c)    describe any additional material or information necessary before the Participant's or Beneficiary's request may be acted upon favorably; and

(d)    explain the procedure for appealing the adverse determination.

### 4.3 Benefit Claim Appeals

A Participant or Beneficiary whose claim for benefits has been denied may, within 60 days of receipt of any adverse benefit determination, appeal such denial to the Plan Administrator. All appeals shall be in the form of a written statement and shall—

(a)     set forth all of the reasons in support of favorable action on the appeal;

(b)     identify those provisions of the Plan upon which the claimant is relying; and

(c)     include copies of any other documents or other materials which may support favorable consideration of the claim.

The Plan Administrator or the person authorized by the Plan Administrator to consider and decide such appeals shall decide the issues presented within 60 days after receipt of such request, but this period may be extended for up to an additional 60 days in special circumstances provided that written notice of the extension is furnished to the claimant prior to the commencement of the extension. Such decision shall be set forth in writing, include specific reasons for the decision, refer to pertinent Plan provisions on which the decision is based, and shall be binding on all persons affected thereby.

# Article 5. Eligibility and Participation

## 5.1 Eligibility and Participation

Each Employee who is employed with a Participating Unit and who, if the Employee is a Part-Time Employee, has completed a Year of Eligibility Service or is reemployed by an Employer after having previously completed a Year of Eligibility Service, shall be eligible to participate in the Plan. An Employee who is a member of an employee unit covered by a collective bargaining agreement between the Employer and employee representatives shall be eligible to participate in the Plan only if such agreement provides for participation of members of that employee unit in the Plan. For purposes of this Article, a United States citizen employed by an Affiliated Company (but excluding any foreign Affiliated Company to which an agreement for Social Security coverage under section 3121(l) of the Code does not apply) primarily engaged in business outside the United States, shall be deemed to be an Employee of a Participating Unit, subject to the requirements and restrictions of sections 406 and 407 of the Code. A non-resident alien Employee who received no earned income from sources within the United States from the Company or any Affiliated Company preceding the date which otherwise would be the person's Enrollment Date shall not be eligible to participate in the Plan.

Participation by an Eligible Employee shall be entirely voluntary. An Eligible Employee may elect to participate beginning on the next Enrollment Date by delivering to the Plan Administrator a written election to participate and other authorizations and designations as may be prescribed by any Regulations.

# Article 6. Participant Contributions

## 6.1 Rate of Contribution

Subject to the limitations described in Appendix A, a Participant may elect to contribute in Before-Tax and After-Tax Contributions, rounded in each instance to the nearest full dollar, an amount equal in the aggregate to a full percentage of Base Pay from 1 percent to 17 percent, provided that, even though the amount is not equal to a full percentage of Base Pay, a Participant may elect to make aggregate Before-Tax Contributions equal to the limitation then in effect under section A.1(a) of Appendix A. The percentage of Base Pay designated by the Participant shall continue in effect, notwithstanding any change in the amount of his or her Base Pay, until revised, suspended, or resumed under section 6.2 of this Article 6. Participant Contributions shall be made through periodic payroll deductions, however, After-Tax Contributions may also be made through another form of payment if authorized by the Plan Administrator. For periods before January 1, 2000, Before–Tax Contributions are limited to 13 percent of Base Pay.

## 6.2 Revision, Suspension, or Resumption of Participant Contributions

A Participant may elect once every 30 days to either revise the amount completely, suspend, or resume his or her Participant Contributions effective as of the next available Pay Period following his or her election. A Participant may also revise the amount of his or her Participant Contributions if an increase in the Participant's Matched Contributions would cause his or her Participant Contributions to otherwise exceed the amount permitted by section A.3 if not revised, effective with the first Pay Period reflecting the Participant's increase in Matched Contributions. If a Participant does not revise the amount of his or her Participant Contributions to or below the maximum amount permitted by section A.3 pursuant to the preceding sentence, the Plan Administrator shall reduce the Participant Contributions of such Participant to the maximum amount permitted by section A.3, effective with the first Pay Period reflecting the Participant's increase in Matched Contributions.

A Participant who is notified by the Plan Administrator that he or she either—

(a)     has become a Highly Compensated Eligible Employee or Former Employee; or

(b)     has ceased to be a Highly Compensated Eligible Employee or Former Employee,

may also elect to revise the amount of his or her Participant Contributions effective with the first Pay Period following the issuance of such notice. If a Participant who becomes a Highly Compensated Eligible Employee or Former Employee does not elect to revise the amount of his or her Participant Contributions to or below the maximum amount permitted by section A.1(b) and A.2 pursuant to the preceding sentence, the Plan Administrator shall reduce the Participant Contributions of such Participant to the maximum amount permitted by section A.1( b) and A.2, effective with the first Pay Period following the date of the determination by the Plan Administrator that the Participant is a Highly Compensated Eligible Employee or

Former Employee. A Participant will not be permitted to make up suspended Participant Contributions.

## 6.3 Rollover Contributions

In addition to the foregoing, Employees eligible to be Participants may make a Rollover Contribution if the Rollover Contribution is $200 or more or, regardless of the amount, if the Rollover Contribution is made by a Participant to restore the forfeited amount pursuant to section 11.4. A Rollover Contribution must be designated as such by the Employee at the time it is made, and must be made in cash unless the Plan Administrator approves a Rollover Contribution of other property. A Rollover Contribution shall be made directly to the Participant's Account (such an Account thereupon being established for an Employee who does not otherwise have such an Account). Rollover Contributions, and earnings thereon, shall be held in the Rollover Contributions subaccount. Rollover Contributions made to the AlliedSignal Savings Plan or the AlliedSignal Thrift Plan before June 1, 1993, and transferred to this Plan, shall be considered as earnings in the After-Tax Contributions subaccount. No Employer Contribution with respect to a Rollover Contribution will be made. The Employee shall make a separate election at the time the Rollover Contribution is made as to the Fund or Funds in which the Rollover Contribution is to be invested, as provided in section 9.1, but thereafter such Rollover Contribution shall be subject to the usual transfer provisions of section 9.1 and distribution and withdrawal provisions of Articles 12 and 13.

## 6.4 Transfers from Other Plans

The Plan may accept transferred assets from other qualified plans (including by merger of such plans into the Plan) for Employees eligible to be Participants. Transferred assets shall be allocated to the subaccounts under this Plan which the Plan Administrator determines to be most similar to the accounts maintained under the transferor plan (i.e., after-tax contributions under the transferor plan will be allocated to the Participant's After-Tax Contribution subaccount; tax deferred contributions under the transferor plan will be allocated to the Participant's Before-Tax Contribution subaccount, and employer contributions under the transferor plan will be allocated to the Participant's Employer Contribution subaccount). Such transfers are to be in cash unless the Plan Administrator approves a transfer of other property. In the case of a transfer of other property, the Plan Administrator shall determine whether such property is to be transferred into existing Funds or segregated in separate funds. If separate funds are established, the Plan Administrator shall adopt rules and regulations regarding such funds.

A Participant's transferred assets accepted by the Plan from another qualified plan, except from the AlliedSignal Savings Plan or AlliedSignal Thrift Plan, shall be invested in the Funds selected by the Participant and, to the extent a Participant has not designated any such Funds, such transferred assets shall be invested in the Stable Value Fund until the Participant elects to transfer all or part of the transferred assets into other Funds pursuant to section 9.1. A Participant's transferred assets accepted by this Plan from the AlliedSignal Savings Plan or the AlliedSignal Thrift Plan shall be invested in the same Funds that the transferred assets

were invested in under the AlliedSignal Savings Plan or AlliedSignal Thrift Plan until the Participant elects to transfer all or part of the transferred assets into other Funds pursuant to section 9.1.

If all or part of the amounts transferred to the Plan from another qualified plan for persons who formerly participated in that plan were not fully vested in such plan, vesting under the Plan shall continue as determined by the Plan Administrator; provided, however, that such persons must vest with respect to any transferred amounts no less rapidly than they would have under the plan from which such amounts were transferred. Notwithstanding the foregoing, the Plan may not receive a direct or indirect transfer from another qualified plan if such other plan provides, or at any time had provided, benefits in the form of annuities.

### 6.5 Additional Contributions
Effective December 12, 1994, make-up contributions on behalf of reemployed members of the military services shall be made as required by the provisions of the Uniformed Services Employment and Reemployment Rights Act of 1994 and Code section 414(u).

# Article 7. Employer Contributions

## 7.1 Rate of Employer Contributions

Subject to the limitations described in Appendix A and the suspension provisions of Article 13, beginning with a Participant's first Month of Participation following the completion of a Year of Vesting Service, Employer Contributions shall be made for each Participant in an amount equal to 50 percent of Matched Contributions. For each Participant who has earned at least 60 Months of Participation, counting only Months of Participation earned after the completion of one Year of Vesting Service, Employer Contributions shall be increased from 50 percent to 100 percent of Matched Contributions.

## 7.2 Payment

Employer Contributions shall be credited to each Participant's Account as of the Valuation Date for which the corresponding Matched Contribution is credited to the Participant's Account and shall be transferred to the Trustee in cash.

# Article 8. Trustee

## 8.1 Trustee

Delphi shall enter into an agreement or agreements (the "Trust") with a trustee or trustees to act under the Plan. The Trustee shall receive all contributions under the Plan, shall hold, manage, and invest the same, reinvest any income therefrom, and make distributions from the Trust, all in accordance with instructions and directions of Delphi. Delphi may provide in the Trust for the appointment of one or more investment managers and may direct the Trustee in the investment of all or a portion of the assets held under the Plan. The Trustee shall establish as part of the Trust for the investment of contributions under the Plan such investment funds as may be authorized by Delphi.

Subject to the provisions of Article 9 hereof, Delphi may expressly authorize the Trustee to invest Plan assets in deposits which bear a reasonable rate of interest in a bank or similar financial institution supervised by the United States or a State, whether or not such bank or other institution is a fiduciary of the Plan within the meaning of section 3(21) of ERISA.

Delphi may at any time revoke the Trust and upon such revocation appoint a successor Trustee(s).

# Article 9. Investment of Contributions

## 9.1 Investment of Contributions

(a)  Participant Contributions, Rollover Contributions, and Employer Contributions may be invested in—

(1)  the State Street Global Advisors Small Cap Fund, which seeks to maximize total return by investing primarily in stocks of companies having market capitalization ranging from $100 million to $1.5 billion;

(2)  the State Street Global Advisors Stable Value Fund, which seeks to preserve the principal amount of contributions while maintaining a rate of return comparable with other conservative fixed income investments and is invested in investment contracts issued by insurance companies, banks, and other financial institutions, as well as short-term investment products, which hold a minimum AA rating from either S&P or Moody's ratings services at the time of purchase and meet the credit quality criteria for approval on the investment manager's "issuer buy list";

(3)  the State Street Global Advisors Matrix Equity Fund, a stock fund that seeks to outperform the overall stock market, as measured by the S&P 500 Index, while maintaining a broadly diversified approach;

(4)  the State Street Global Advisors Standard & Poor's 500 Index Fund, which seeks to replicate the total return of the S&P 500 Index;

(5)  the State Street Global Advisors Growth & Income Fund, which seeks to achieve long-term capital growth, current income, and growth of income primarily through investments in equity securities;

(6)  the State Street Global Advisors Bond Market Fund, which seeks to maximize total return by investing in diversified fixed income securities, including, but not limited to, those represented by Lehman Brothers Aggregate Bond Index;

(7)  the State Street Global Advisors Life Solutions Income & Growth Fund, which seeks income and secondarily, long-term growth of capital by investing in a portfolio of stock and bond mutual funds;

(8)  the State Street Global Advisors Life Solutions Balanced Fund, which seeks a balance of growth of capital and income by investing in a portfolio of stock and bond mutual funds similar to the State Street Global Advisors Life Solutions Income & Growth Fund except with a greater emphasis on U.S. stock funds under normal market conditions;

(9)    the State Street Global Advisors Life Solutions Growth Fund, which seeks long-term growth of capital by investing in a portfolio of stock and bond mutual funds similar to the State Street Global Advisors Life Solutions Income & Growth Fund and the State Street Global Advisors Balanced Fund except with an even greater emphasis on U.S. stock funds under normal market conditions; and

(10)   the State Street Global Advisors International Growth Opportunities Fund, which seeks long-term capital growth by investing at least 65 percent of total assets in equity securities of foreign issuers.

(b)    Participant Contributions, Rollover Contributions, and Employer Contributions may also be invested in employer common stock funds as follows:

(1)    Effective June 3, 1999, Participant Contributions, Rollover Contributions, and Employer Contributions may be invested in the "Delphi Common Stock Fund," a fund invested primarily in Delphi Common Stock and, for purposes of liquidity, a commingled short-term investment funds offered by the Trustee.

(2)    For the period from December 1, 1998 to May 24, 1999, Participant Contributions, Rollover Contributions, and Employer Contributions may be invested in the "General Motors Common Stock Fund." Such fund shall be invested primarily in General Motors Corporation common stock and, for purposes of liquidity, in commingled short-term investment funds offered by the Trustee. The General Motors Common Stock Fund was frozen effective May 24, 1999 and no additional monies will be accepted for investment by this fund. Dividends on General Motors common stock in this fund shall be invested in the Stable Value fund. This fund will be liquidated effective May 23, 2000 and any money remaining in the fund on that date will be transferred to the Stable Value Fund.

(3)    For the period ending June 30, 1998, Participant Contributions, Rollover Contributions, and Employer Contributions may be invested in the "AlliedSignal Common Stock Fund." Such fund shall be invested primarily in AlliedSignal Inc. common stock (or the common stock of any successor entity) and, for purposes of liquidity, in commingled short-term investment funds offered by the Trustee. The AlliedSignal Common Stock Fund was frozen effective June 30, 1998 and no additional monies will be accepted for investment by this fund. Dividends or other cash payments on AlliedSignal common stock in this fund shall be invested in the Stable Value Fund.

(c)    Each Participant must designate an investment formula at the time of election to participate in the Plan. Such designation shall continue in effect unless and until changed; and such change may be made daily. To the extent a designation of an investment formula has not been made, the applicable portion of such Participant's

Participant Contributions, Rollover Contributions, and Employer Contributions shall be invested in the State Street Global Advisors Stable Value Fund. Investments in the Funds shall be made in 5 percent increments of a Participant's Participant Contributions and Rollover Contributions and Employer Contributions, as elected by each Participant, however, the minimum investment a Participant may take in any such Fund is 10 percent.

(d)     A Participant may elect, once daily, to transfer on the Valuation Date coinciding with the date of election or, if there is no Valuation Date on that date, the first Valuation Date immediately following the date of election, the value attributable to the Participant's prior Participant Contributions, Rollover Contributions, and Employer Contributions, and earnings thereon, in all Accounts established for the Participant to any of the Funds, provided that the transfer results in the distribution of the value attributable thereto among the Funds described in this section 9.1 in 5 percent increments and a minimum amount of 10 percent in any such Fund invested.

## 9.2 Reinvestment of Income

Cash dividends, interest, and other distributions received in respect of any Fund shall be reinvested in the same Fund.

## 9.3 Purchase of Delphi Common Stock

As soon as practicable after receipt of cash contributions or other funds applicable to the Delphi Common Stock Fund, the Trustee shall purchase shares of Delphi Common Stock from such source and in such manner as the Trustee may determine; provided, however, the Trustee, for liquidity purposes, may place a portion of the cash in short-term fixed income investments to be held in the Delphi Common Stock Fund. If the Trustee and Delphi agree, any such shares may be purchased from Delphi and may either be treasury shares or authorized but unissued shares. In the event that treasury or authorized but unissued shares of Delphi Common Stock are purchased by the Trustee from Delphi, the price per share shall be the price of Delphi Common Stock on the New York Stock Exchange determined at the close of regular trading for the date of purchase or, if no sale occurred on such date, for the next preceding day on which a sale occurred.

## 9.4 Dividends Paid with Respect to Delphi Common Stock

All dividends paid by Delphi with respect to shares of Delphi Common Stock held in the Delphi Common Stock Fund on the record date for the dividend, whether attributable to Participant Contributions, Employer Contributions, Rollover Contributions, or otherwise, shall be paid to the Plan and reinvested in the Delphi Common Stock Fund. Any such dividends paid shall be allocated to each Participant or Beneficiary according to the shares of Delphi Common Stock held for each such Participant or Beneficiary on such Participant's or Beneficiary's Account, whether or not such Participant is fully vested in such Account at the time of such payment.

# Article 10. Participant's Account and Subaccounts

## 10.1 Participant's Account and Subaccounts

There shall be established for each Participant a separate Account, to which shall be credited all After-Tax Contributions, Before-Tax Contributions, Rollover Contributions, and Employer Contributions. Subaccounts shall be maintained within each Account to reflect the value of After-Tax Contributions, Before-Tax Contributions, and Employer Contributions, as well as, where applicable, Rollover Contributions.

## 10.2 Valuation of Account

The Participant's Account and each subaccount thereunder shall be revalued as of each Valuation Date, separately for each Fund, to reflect the effect of earnings (consisting of all investment income collected or accrued, and all realized or unrealized gains and losses), plus all contributions, distributions, forfeitures, interfund transfers, loans, withdrawals, and accrued administrative costs borne by the Participant pursuant to Article 16.

## 10.3 Crediting and Charging Accounts

In making such revaluation the following shall apply:

(a)     **Earnings.** The earnings (as stated above) of each Fund shall be allocated as of each Valuation Date to the Accounts of Participants in each Fund in proportion to the balance of such Accounts in such Fund at the beginning of such Valuation Date.

(b)     **Contributions.** Participant Contributions shall be credited as set forth in Article 6 and sections 10.1 and 10.2 above. Rollover Contributions shall be credited as set forth in section 6.3. Employer Contributions shall be credited as set forth in Article 7 and sections 10.1 and 10.2 above.

(c)     **Forfeitures.** Any amount forfeited by a Participant under provisions of the Plan shall be a direct charge against that Participant's Account as of the Valuation Date on which the forfeiture occurs and shall be applied as provided in section 11.3 of this Plan.

(d)     **Withdrawals.** Any amount withdrawn by a Participant shall be a direct charge against the Participant's Account as of the Valuation Date on which the withdrawal is made.

## 10.4 Separate Accounting for After-Tax Contributions

After-Tax Contributions shall be separately accounted for and earnings, gains, losses, withdrawals, distributions, and other credits and charges shall be allocated to such After-Tax Contributions on a reasonable and consistent basis. After-Tax Contributions and the amounts allocable thereto shall constitute a "separate contract" within the meaning of section 72(d) of the Code.

# Article 11. Vesting

## 11.1 Participant Contributions and Rollover Contributions

Each Participant shall have a full and immediate vested interest in that portion of his or her Account attributable to Participant Contributions, Rollover Contributions, and earnings on Participant Contributions and Rollover Contributions.

## 11.2 Employer Contributions

Subject to Appendix A, each Participant shall have a full and immediate vested interest in that portion of his or her Account attributable to Employer Contributions and the earnings thereon upon the earliest of—

(a)     the completion of five Years of Vesting Service;

(b)     death;

(c)     Disability;

(d)     termination by reason of Retirement or Reduction-in-Force; or

(e)     the attainment of age 65.

Notwithstanding the preceding sentence, each Participant who became an employee of the Company on January 1, 1996, and who had assets transferred from the AlliedSignal Savings Plan pursuant to section 6.4, shall have a full and immediate vested interest in that portion of his or her Account attributable to Employer Contributions and the earnings thereon.

## 11.3 Forfeitures

Any portion of the Participant's Account attributable to Employer Contributions and the earnings thereon which is not vested in accordance with section 11.2 above at his or her Severance from Service Date shall be forfeited as of the Valuation Date coinciding with or immediately following the date on which the Participant incurs a One-Year Period of Severance.

All forfeited amounts shall be applied to reduce subsequent Employer Contributions required under the Plan.

## 11.4 Rehired Participants

If a terminated Participant who forfeited the unvested portion of his or her Account under section 11.3 above returns to the employ of an Employer or Affiliated Company prior to incurring five consecutive One-Year Periods of Severance, the forfeited amount shall be restored to his or her Account. Such amount, unadjusted by any subsequent gains or losses, shall be restored on the first day that the Participant completes an Hour of Service following his reemployment. Restored forfeitures shall be credited to the Account attributable to

Employer Contributions and shall be invested in the funds designated by the Participant. The source for restoring forfeitures shall be current forfeitures and, if insufficient, an additional Employer contribution.

## 11.5 No Divestment for Cause

There shall be no divestment of the Vested Portion of a Participant's Account for any cause.

# Article 12. Distributions

## 12.1 Amount of Benefits

The amount of benefits payable to a Participant (or his or her Beneficiary) after the Participant has terminated employment or upon attaining age 70 1/2 shall be based on the fair market value of the Vested Portion of the Participant's Account, determined as of the applicable Valuation Date described in section 12.2 below.

## 12.2 Methods of Payment

(a)    **Retirement, Reduction-in-Force, Disability, or Attainment of Age 70 1/2.** A Participant who terminates employment as a result of Retirement, Reduction-in-Force, or Disability, or who continues as an Employee or Former Employee after attaining age 70 1/2 shall be entitled to receive a distribution of his or her Account in either—

    (1)    a single payment; or

    (2)    annual or at least five quarterly installments over a period specified by the Participant not to exceed 40 years,

subject, however, to the minimum distribution requirements of section 12.4.

    (A)    **Single Sum Payment.** A Participant may select a Valuation Date which will be used in calculating the amount of a single sum payment. Such Valuation Date must coincide with or follow the later of—

        (i)    the termination of employment; and

        (ii)    the completion of a severance pay period;

provided, however, if the Participant chooses to defer the single sum payment beyond the later of—

        (I)    the termination of employment; and

        (II)    the completion of a severance pay period,

the Participant may only choose the last Valuation Date of any month. The Participant shall specify a single payment and the mode of distribution pursuant to section 12.5. Payment shall be made as soon as practicable after the applicable Valuation Date. A Participant may change any of the elections made prior to the Valuation Date originally selected. In no event may such Valuation Date be later than the last Valuation Date of February in the year following the year in which the Participant attains age 70 1/2.

(B) **Annual or Quarterly Installments.** A Participant may select the frequency of installment payments (either annual or quarterly), the initial Valuation Date (which shall be the last Valuation Date in the calendar year in the case of annual installments (the "annual Valuation Date") or the last Valuation Date of a calendar quarter in the case of quarterly installments (the "quarterly Valuation Date")), and the mode of distribution pursuant to section 12.5. Such selection shall be made on or before the initial annual Valuation Date or initial quarterly Valuation Date so selected. Payments will be made as soon as practicable after the annual Valuation date of each year, in the case of annual installments, or as soon as practicable after each quarterly Valuation Date in each year. A Participant may change any of the elections made, provided, such change is made prior to the initial annual Valuation Date or initial quarterly Valuation Date, whichever is applicable. In no event may the initial annual Valuation Date or initial quarterly Valuation Date be later than the December 31 that is coincident with or immediately follows the date on which the Participant attains age 70 1/2. In addition, a Participant who has selected annual installments may, after such installments have commenced, elect on or before December 1 of each year payment of a specific dollar amount, up to the remaining balance in the Participant's Account for the annual installment payable with respect to the annual Valuation Date of the year in which such election is made. A Participant who has selected quarterly installments may, after such installments have commenced, elect on or before September 1 of each year payment of a specific dollar amount, up to the remaining balance in the Participant's Account, for the total of the four quarterly installments received in the year in which such election is made. In the case of annual installments, such dollar amount, or, if greater, the annual installment amount otherwise payable hereunder without regard to such election, shall be paid as soon as practicable after the annual Valuation Date next following the election. In the case of quarterly installments, the September Valuation Date quarterly installment for the year in which such election is made will be an amount equal to the greater of—

(i)     the excess of the dollar amount elected for the four quarterly installments for the year in which such election is made over the aggregate amount of the first three preceding quarterly installments in such year; or

(ii)    the amount of such September Valuation Date quarterly installment determined without regard to the election.

Anything in this section 12.2(a)(B) to the contrary notwithstanding, a Participant may elect, on any Valuation Date, to take a single sum payment of the remaining balance in his or her Account.

(C) **Default Payment.** Selection under section 12.2(a)(A) above must be made on or before the earlier of—

    (i)    the date which is six months after the date of Retirement, Reduction-in-Force, or Disability; or

    (ii)   the last Valuation Date of February which follows the calendar year in which the Participant attains age 70 1/2.

Selection under section 12.2(a)(B) above must be made on or before the earlier of—

    (I)    the date which is six months after the date of Retirement, Reduction-in-Force, or Disability; or

    (II)  the December 31st which coincides with or immediately follows the date the Participant attains age 70 1/2.

In the absence of a timely selection by a Participant who has incurred a Retirement, Reduction-in-Force, or Disability, distribution shall be made in a single sum payment as soon as practicable after the last Valuation Date of the month in which the Participant's sixty-fifth birthday occurs (or, if later, as soon as practicable after the last Valuation Date of the sixth month following the month in which Retirement, Reduction-in-Force, or Disability occurs), but in no event shall distribution be later than the last Valuation Date of February which follows the calendar year in which the Participant attains age 70 1/2. A Participant may change such default payment before the Valuation Date or, if applicable, the last business day of February which follows the calendar year in which the Participant attains age 70 1/2; provided, however, that a selection under section 12.2(a)(B) cannot be made later than the December 31st which coincides with or immediately follows the date the Participant attains age 70 1/2. In no event, however, may the Valuation Date be later than the last Valuation Date of February that follows the calendar year in which the Participant attains age 70 1/2.

(b)    **Death.** Upon the death of a Participant, whether or not the Participant previously terminated employment and whether or not distribution of the Participant's Account has previously commenced, there shall be distributed to the Participant's Beneficiary, as soon as practicable, but in no event later than one year after the close of the Plan Year of the Participant's death, the entire remaining Account of the Participant. Such distribution shall be in a single payment. Notwithstanding the foregoing, distribution of the Account of a Participant who was a Participant in the SSP on December 31, 1989, may be made at the election of such Participant's Beneficiary, in annual installments as described in section 12.2(a)(B).

(c)     **Termination of Employment for Reasons Other than Retirement, Reduction-in-Force, Disability, or Death.** A Participant who terminates employment for a reason other than Retirement, Reduction-in-Force, Disability, or Death shall be entitled to receive a distribution of the Vested Portion of his or her Account in a single payment. Regardless of whether a Participant has terminated employment with the Employer, if the Employer sells substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used by the Employer in a trade or business or, the Employer sells its interest in a subsidiary (within the meaning of section 409(d)(3) of the Code), distributions may be made hereunder in a single payment with respect to a Participant who continues employment with the entity acquiring the assets or such subsidiary, only if requirements of section 401(k)(10) of the Code and the regulations thereunder are satisfied. A Participant may select a current or future Valuation Date which will be used in calculating the amount of the single sum payment. In addition to specifying the Valuation Date, the Participant shall elect the mode of distribution pursuant to section 12.5. Payment shall be made as soon as practicable after the applicable Valuation Date. The selection of a Valuation Date and mode of distribution must be made on or before a date which is six months after the date of the Employee's Severance from Service Date. In the absence of a timely election, distribution shall be made in a single sum payment as soon as practicable after the last Valuation Date of the month in which the Participant's sixty-fifth birthday occurs (or, if later, as soon as practicable after the last Valuation Date of the sixth month following the month in which the Employee's Severance from Service Date occurs). A Participant who makes a timely election or who fails to make a timely election will have one opportunity, prior to the Valuation Date previously selected (or deemed to have been selected in the absence of a prior election), to elect or change a prior (or deemed) election (whether as to Valuation Date or mode of distribution). In no event, however, may the Valuation Date elected be later than the last Valuation Date of February which follows the calendar year in which the Participant attains age 70 1/2.

## 12.3 Cash-Outs

Notwithstanding section 12.2 above, if the value of the Vested Portion of a Participant's Account as of the Valuation Date immediately following the Participant's termination of employment does not exceed $5,000, the Participant shall receive an immediate single payment of the vested portion of his or her Account as soon as practicable following such Valuation Date.

## 12.4 Minimum Distributions

Notwithstanding anything to the contrary in this Plan, in no event shall any distribution made from this Plan to any Participant or Beneficiary—

(a)     be less than the minimum required pursuant to section 401(a)(9) of the Code and the regulations thereunder; or

(b)    commence any time later than the required beginning date under section 401(a)(9) of the Code and the regulations thereunder.

Notwithstanding anything to the contrary in this Plan, if a Participant elects (either initially or by a prospective change) installment payments (annual or quarterly) and a Valuation Date that is later than the December 31 that is coincident with or immediately follows the date on which the Participant attains age 69 1/2, then, in addition to the installment payments otherwise payable to the Participant pursuant to this Article 12 based upon such election, there shall be an additional payment made to the Participant at the time of the first installment payment otherwise payable pursuant to the Participant's election. The amount of such additional payment shall be equal to the amount that would have been paid to the Participant as the first annual installment pursuant to this Article 12 if the Participant had elected annual installments (over the period otherwise specified by the Participant as permitted by the Plan) commencing with the December 31 that is coincident with or immediately follows the date on which the Participant attains age 69 1/2. For purposes of determining annual distributions, life expectancies of the Participant and the Participant's spouse will not be recalculated annually as provided in section 401(a)(9)(D) of the Code.

## 12.5 Mode of Distribution
Distribution of a Participant's Account shall be made as follows:

(a)    The portion of the Account invested in the investment funds described in section 9.1(a) shall be distributed in cash; provided, however, that a Participant or, where applicable, each of a Participant's Beneficiaries, may elect to receive the entire distribution in full shares of Delphi Common Stock (with cash in lieu of fractional shares) by electing to transfer his or her Account to the Delphi Common Stock Fund in accordance with the provisions of section 9.1.

(b)    The portion of the Account invested in the Delphi Common Stock Fund shall be distributed in full shares of Delphi Common Stock (with cash in lieu of fractional shares) or in cash, as the Participant or, where applicable, each of a Participant's Beneficiaries, may elect under section 12.2. In the absence of an election an Account having less than ten shares of Delphi Common Stock will be distributed in cash; and ten or more shares of Delphi Common Stock will be distributed in full shares of Delphi Common Stock (with cash in lieu of fractional shares).

(c)    The portion of the Account invested in the AlliedSignal Common Stock Fund shall be distributed in full shares of AlliedSignal common stock (with cash in lieu of fractional shares) or in cash, as the Participant or, where applicable, each of a Participant's Beneficiaries, may elect under section 12.2. In the absence of an election, an Account having less than ten shares of AlliedSignal common stock will be distributed in cash, and ten or more shares of AlliedSignal common stock will be distributed in full shares of AlliedSignal common stock (with cash in lieu of fractional shares).

(d)     The portion of the Account invested in the General Motors Common Stock Fund
shall be distributed in full shares of General Motors common stock (with cash in lieu
of fractional shares) or in cash, as the Participant or, where applicable, each of a
Participant's Beneficiaries, may elect under section 12.2. In the absence of an
election, an Account having less than ten shares of General Motors common stock
will be distributed in cash, and ten or more shares of General Motors common stock
will be distributed in full shares of General Motors common stock (with cash in lieu
of fractional shares).

## 12.6 Order of Distributions

Installment distributions shall be made from the following subaccounts in the order set forth
below, as the accounts described in each successive subparagraph are exhausted:

(a)     **After-Tax Contributions.** Installment distributions from a Participant's After-Tax
Contributions and earnings thereon in the following order:

   (1)     An amount equal to all or part of the Participant's Pre-1987 After-Tax
Contributions from any prior plan transferred to this Plan in a plan-to-plan
transfer and remaining in the Plan (excluding the earnings thereon) to the extent
required to exhaust such amounts, but no more than the current value of such
contributions if such value is less than the amount of such contributions.

   (2)     An amount equal to all or a pro rata portion of the Participant's post-1986
After-Tax Contributions, the earnings thereon, and the earnings on the
Participant's pre-1987 After-Tax Contributions from any prior plan transferred
to this Plan in a plan-to-plan transfer (including in each instance Rollover
Contributions considered as earnings in the After-Tax Contributions
subaccount), to the extent required to exhaust such amounts, but no more than
the current value of such contributions and such earnings if such value is less
than the amount of such contributions and such earnings.

(b)     **IRA Account.** All or part of the Participant's IRA Account and the earnings thereon.

(c)     **Rollover Contributions.** All or part of the Participant's Rollover Contributions and
earnings thereon in his or her Rollover Contribution subaccount.

(d)     **Employer Contributions.** All or part of the Vested Portion of a Participant's
Employer Contributions and the earnings thereon.

(e)     **Before-Tax Contributions.** All or part of the Participant's Before-Tax
Contributions and the earnings thereon.

## 12.7 Distribution Procedures

Installment distributions shall be made from those Funds in which the subaccounts being
distributed under section 12.6 are invested as of the applicable Valuation Date. In the event

the contributions and the earnings thereon which are deemed to be distributed under section 12.6 are invested in more than one Fund, and the amount distributed is less than the value of the amount in such subaccount being distributed, the distribution shall be made proportionately from the investment funds listed in section 9.1; and if such Funds are not sufficient to provide the full amount of the distribution, the balance shall come (until such amounts are successively exhausted) from—

(a)     Participant Contributions and Rollover Contributions considered as earnings in the After-Tax Contributions subaccount, and earnings thereon invested in the General Motors Common Stock Fund, the AlliedSignal Common Stock Fund, and the Delphi Common Stock Fund;

(b)     contributions to the IRA Account and earnings thereon invested in the General Motors Common Stock Fund, the AlliedSignal Common Stock Fund, and the Delphi Common Stock Fund;

(c)     Rollover Contributions and earnings thereon invested in the General Motors Common Stock Fund, the AlliedSignal Common Stock Fund, and the Delphi Common Stock Fund;

(d)     Employer Contributions and the earnings thereon invested in the investment funds described in section 9.1(a), pro rata; and

(e)     Employer Contributions and the earnings thereon invested in the General Motors Common Stock Fund, the AlliedSignal Common Stock Fund, and the Delphi Common Stock Fund.

Any distribution from the General Motors Common Stock Fund, the AlliedSignal Common Stock Fund, and the Delphi Common Stock Fund shall be made in accordance with section 12.5.

## 12.8 Rollover Distributions

Any Participant or Beneficiary who is eligible to receive a distribution from the Plan which is an Eligible Rollover Distribution, may elect in writing on the form or forms approved by the Plan Administrator, to make a direct rollover pursuant to Code section 401(a)(31) and the regulations thereunder, to an Eligible Retirement Plan, provided, that, the amount of Eligible Rollover Distribution for the calendar year is or is reasonably expected to be at least $200 and, if only a portion of the Eligible Rollover Distribution is to be rolled over, the amount of the direct rollover is at least $500. An election to make or not to make a direct rollover with respect to payments which are a part of a series of payments which qualify as an Eligible Rollover Distribution shall apply to all subsequent payments unless a new election is made with respect to subsequent payments. A direct rollover of an Eligible Rollover Distribution from the Plan may not be made to more than one Eligible Retirement Plan, except that any IRA Account may be rolled to a separate Eligible Retirement Plan. If Participant or

Beneficiary fails to make a direct rollover election, the Plan shall distribute the amount as if a direct rollover election with respect to the distribution had not been made.

## 12.9 Waiver of 30-Day Notice Period

Distributions under this Article (other than under section 12.3 relating to cash-outs, which shall be made immediately) may commence less than 30 days after the notice required under section 1.411(a)-11(c) of the Treasury Department Regulations is given, provided that—

(a)    the Participant is clearly informed that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option); and

(b)    the Participant, after receiving the notice, affirmatively elects a distribution.

# Article 13. Withdrawals

## 13.1 Withdrawals of Participant Contributions, Employer Contributions, and IRA Account

A Participant who is on the payroll of an Employer may elect to withdraw his or her Participant Contributions, Employer Contributions, Rollover Contributions, the IRA Account, and the earnings on such contributions and accounts, in accordance with the provisions of this Article 13, and according to the order prescribed in this Article 13. Except as otherwise prescribed in section 13.2 below, withdrawals hereunder shall be according to the order in sections 13.1(a) through 13.1(e), as the amounts described in each successive subparagraph are exhausted. Withdrawals shall be made from the Funds in which such amounts are invested in accordance with section 13.3.

(a)    **After-Tax Contributions.** A Participant may elect to withdraw all or part of his or her After-Tax Contributions and the earnings thereon. Any such withdrawal shall be made in the following order, as the amounts described in each successive subparagraph are exhausted:

   (1)    an amount equal to all or part of the Participant's Pre-1987 After-Tax Contributions from any prior plan transferred to this Plan in a plan-to-plan transfer and remaining in the Plan (excluding the earnings thereon) to the extent required to exhaust such amounts, but no more than the current value of such contributions if such value is less than the amount of such contributions;

   (2)    an amount equal to all or a pro rata portion of the Participant's post-1986 After-Tax Contributions, the earnings thereon, and the earnings on Pre-1987 After-Tax Contributions from any prior plan transferred to this Plan in a plan-to-plan transfer (including in each instance Rollover Contributions considered as earnings in the After-Tax Contributions subaccount), to the extent required to exhaust such amounts, but no more than the current value of such contributions and such earnings if such value is less than the amount of such contributions and such earnings. Any withdrawal of After-Tax Contributions by a Participant who has not completed 60 Months of Participation shall result in a suspension of Employer Contributions for a period of 90 days immediately following such withdrawal and shall be based on the value of the Participant's Account on the Valuation Date immediately before the withdrawal.

(b)    **IRA Account.** A Participant may elect to withdraw all or part of the Participant's IRA Account and earnings thereon.

(c)    **Rollover Contributions.** A Participant may elect to withdraw all or part of his or her Rollover Contributions and the earnings thereon in his or her Rollover Contribution subaccount.

(d)    **Employer Contributions.** A Participant may elect to withdraw all or part of the Vested Portion of his or her Employer Contributions and earnings thereon. Any such withdrawal from the Employer Contributions subaccount by a Participant who has not completed 60 Months of Participation shall be based on the value of the Participant's Account on the Valuation Date immediately before the withdrawal and shall result in a suspension of Employer Contributions for a period of 90 days immediately following such withdrawal.

(e)    **Before-Tax Contributions.**

   (1)    **Post-Age 59 1/2 Withdrawals.** A Participant who has attained age 59 1/2 may elect to withdraw all or part of his or her Before-Tax Contributions and the earnings thereon.

   (2)    **Pre-Age 59 1/2 Hardship Withdrawals.** Upon submission of satisfactory evidence by a Participant of a financial hardship, as defined in this paragraph, the Plan Administrator may direct distribution of part or all of his or her Before-Tax Contributions and the earnings thereon (to the extent permitted under this paragraph), but only to the extent required to relieve such financial hardship. No such withdrawal shall be permitted unless the Participant has previously or concurrently withdrawn all amounts available to him under subsections (a) through (c) above. In no event may the Plan Administrator direct that such a withdrawal be made to the extent the financial hardship may be relieved from other resources that are reasonably available to the Participant. Notwithstanding the foregoing, the Plan Administrator may rely upon a Participant's reasonable representation that the financial hardship cannot be relieved through—

      (A)    reimbursement or compensation by insurance or otherwise;

      (B)    reasonable liquidation of the Participant's assets, to the extent such liquidation would not itself cause an immediate and heavy financial need;

      (C)    cessation of Participant Contributions under the Plan;

      (D)    obtaining a nontaxable loan reasonably available under the terms of the Plan or any qualified defined contribution plan maintained by an Employer or Affiliated Company, to the extent any required repayment of such loan would not itself cause an immediate and heavy financial need; or

      (E)    borrowing from commercial sources on reasonable commercial terms.

   A Participant must deliver an executed statement indicating the reason for the need, the amount of the need, and the fact that the Participant has no other

resources reasonably available to relieve that need. For this purpose, a Participant's resources shall be deemed to include those assets of his or her spouse and minor children that are reasonably available to the Participant. For purposes of this section 13.1(e)(2), the term "financial hardship" shall be determined in accordance with regulations (and any other rulings, notices, or documents of general applicability) issued pursuant to section 401(k) of the Code and, to the extent permitted by such authorities, shall be deemed to include any financial need arising from—

(i)     expenses for medical care (as defined in section 213(d) of the Code) previously incurred by the Participant or a Participant's spouse or dependents or necessary for these persons to obtain such medical care and which are not covered by insurance;

(ii)    payment of tuition, room, board and related educational fees for the next 12 months of post-secondary education of a Participant, his or her spouse, children, or dependents;

(iii)   the purchase (excluding mortgage payment) of the Participant's principal residence; or

(iv)    the need to prevent the eviction of the Participant from his or her principal residence or foreclosure on the mortgage of the Participant's principal residence.

The amount required to relieve any such financial need may include any amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the hardship withdrawal.

For any hardship withdrawal, the portion of the Participant's Account attributable to Before-Tax Contributions that is available for withdrawal shall not exceed the lesser of—

(I)     the value of such Before-Tax Contributions as of December 31, 1988 (taking into account earnings and losses attributable to such amounts), plus the total amount of the Participant's Before-Tax Contributions that are made after December 31, 1988; or

(II)    the value of all Before-Tax Contributions (taking into account earnings and losses attributable to such amounts).

A hardship withdrawal shall result in a suspension of Participant Contributions as of the next effective Valuation Date of the hardship withdrawal and such suspension shall last until the later of—

(A)    90 days; or

(B)    the date the Participant reactivates Participant Contributions.

## 13.2 Special Withdrawal Rules

Notwithstanding the ordering rules of section 13.1 above—

(a)    a Participant may elect to make a withdrawal from the Vested Portion of his or her Account which is invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund, provided that such withdrawal is to be made in accordance with the provisions of section 13.1;

(b)    a Participant whose Account includes amounts transferred from the SSP may elect to make a withdrawal from the portion of his or her Account consisting of amounts attributable to the IRA Account, provided the Participant has attained age 59 1/2 or has terminated employment; and

(c)    a Participant who has attained age 59 1/2 may elect to make a withdrawal from the portion of his or her Account consisting of Before-Tax Contributions.

In the absence of a specific election hereunder, the ordering rules of section 13.1 shall apply.

## 13.3 Withdrawal Procedures

A Participant may elect to make a withdrawal under this Article 13, except for hardship withdrawals made pursuant to section 13.1(e)(2), as of any current Valuation Date. The amount available for withdrawal shall be based on the value of the Participant's Account as of the Valuation date elected. The Valuation Date for a hardship withdrawal required pursuant to section 13.1(e)(2) of the Plan shall be the first Valuation Date coinciding with or immediately following the date the hardship withdrawal is approved by the Plan Administrator. Any withdrawal shall be in an amount not less than the lesser of—

(a)    $300; or

(b)    the amount available for withdrawal.

Withdrawals shall be made from those Funds in which the subaccounts being withdrawn under sections 13.1 and 13.2 are invested as of the applicable Valuation Date. In the event the contributions and the earnings thereon which are deemed to be withdrawn under sections 13.1 and 13.2 are invested in more than one Fund, and the amount withdrawn is less than the value of the amount in such subaccount being withdrawn, the withdrawal shall be made proportionately from the investment funds listed in section 9.1(a); if such funds are not sufficient to provide the amount of the withdrawal, the balance shall come (until such amounts in such subaccount are successively exhausted) from—

(1)     the Participant Contributions and Rollover Contributions considered as earnings in the After-Tax Contributions subaccount and earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund;

(2)     contributions to the IRA Account and the earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund;

(3)     Rollover Contributions and earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund;

(4)     Employer Contributions and the earnings thereon invested in the investment funds listed in section 9.1(a), pro rata; and

(5)     Employer Contributions and the earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund.

Any withdrawal from the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund (other than a pre-age 59 1/2 hardship withdrawal), shall be made in full shares of the common stock in such Fund (with cash in lieu of fractional shares) unless the Participant elects to receive cash. In the absence of an election, an Account having less than ten shares of such common stock will be distributed in cash and ten or more shares of common stock will be distributed in full shares of common stock (with cash in lieu of fractional shares). Any pre-age 59 1/2 hardship withdrawal and any other withdrawal which is made at the same time as the pre-age 59 1/2 hardship withdrawal shall be in cash.

Any withdrawal under this Article 13 shall be distributed to the Participant as soon as practicable following the Valuation Date used to determine the amount available for withdrawal. Notwithstanding the foregoing, no withdrawal, distribution, loan, or investment fund transfer may be made by a Participant during the period in which the Plan Administrator is making a determination as to whether a Domestic Relations Order affecting the Participant's Account is a Qualified Domestic Relations Order. Further, if the Plan Administrator is in receipt of a Qualified Domestic Relations Order with respect to any Participant's Account, it may prohibit such Participant from making a withdrawal, distribution, loan, or investment fund transfer until the alternate payee's rights under such order are satisfied.

# Article 14. Participant Loans

## 14.1 Eligibility for Loans

Each Participant who is on the payroll of the Employer or an Affiliated Company is eligible to obtain a loan from the Plan. Only one loan may be outstanding at any time for each Participant. However, a Participant shall not be eligible to obtain a loan during a period in which the Plan Administrator is making a determination of whether a domestic relations order affecting the Participant's Account is a qualified domestic relations order, as defined in section 414(p) of the Code.

## 14.2 Receipt of Loans

A Participant may receive a loan by executing a written promissory note and security agreement with the Plan Administrator and, with respect to a principal residence loan, by filing the required documentation within 30 days after the Participant's Loan Election Date.

## 14.3 Amount of Loan

A Participant's loan shall be derived solely from the Participant's Account (excluding any portion of such Account consisting of the IRA Account transferred from the SSP). The minimum loan available is $1,000 and any loan in excess of $1,000 shall be made in multiples of $100. The maximum loan available will be the lesser of—

(a)     50 percent of the Vested Portion of a Participant's Account (excluding any portion of such Account consisting of the IRA Account transferred from the SSP) under the Plan, determined as of the first Valuation Date coinciding with or immediately following the Participant's Loan Election Date; provided, however, that any distributions made pursuant to Article 12 and any withdrawals made pursuant to Article 13, on or after the Loan Election Date and before the receipt of the promissory note and security agreement by the Plan Administrator, shall reduce the available Vested Portion of a Participant's Account; or

(b)     $50,000, less the highest outstanding principal balance of any loan during the prior 12-month period.

## 14.4 Terms of Loan

(a)     Each loan shall be evidenced by a promissory note and security agreement setting forth the Participant's obligation to repay the borrowed amount to the Plan, in such form and with such provisions consistent with this paragraph as is acceptable to the Plan Administrator.

(b)     The interest rate on a loan shall be a reasonable rate of interest as determined by the Plan Administrator pursuant to the Regulations.

(c)     The principal amount of any loan and the accrued interest thereon shall be repaid by approximately equal payroll deductions which shall be irrevocable until the

outstanding principal balance of the loan, and all accrued interest thereon, is paid in full. However, a Participant who—

(1)    is on a short-term leave of absence; or

(2)    is no longer employed by a Participating Unit but remains employed by the Employer,

shall make periodic payments by certified check to satisfy the outstanding principal balance of the loan and interest thereon; provided, payments continue to be made no less frequently than each calendar quarter and are made on a substantially level basis. The Company may, in its sole discretion, permit each Participant who continues employment with another employer which is not an Affiliated Company, as a result of the disposition of assets by the Company to such employer, to continue to make payments to satisfy the outstanding principal balance of the Participant's loan and interest therein; provided, that such payments are—

(A)    made on a substantially level basis no less frequently than each calendar month by payroll deduction with the Participant's subsequent employer; and

(B)    remitted directly by the Participant's subsequent employer to the Plan in the manner specified by the Company.

If a Participant becomes disabled, loan repayments will continue to be made by payroll deduction as long as the Participant remains on the payroll of the Employer or an Affiliated Company. The outstanding loan balance may be prepaid in full on any Valuation Date without penalty. The term of any loan shall be selected by the Participant and shall be for a period not less than two months and not more than 60 months, provided, however, that a loan which is used by the Participant to acquire his or her principal residence may have a term of up to 25 years.

(d)    If a Participant ceases to be subject to payroll deductions and does not continue to make loan repayments by certified check or by payroll deduction with another employer to the extent permitted by section 14.4(c) or, if a Participant who continues to make loan repayments by certified check or by payroll deduction with another employer fails to timely make any such periodic payment, then the loan shall be deemed to be in default and the outstanding principal balance of the loan and all accrued interest thereon shall be immediately due and payable. If not paid within sixty days after the date of written notice of the amount due, the Plan Administrator may foreclose on the loan by deducting the unpaid outstanding principal balance of the loan and the interest accrued thereon from the Participant's Account; provided, however, that no foreclosure on the Participant's Account, to the extent such loan is secured by Before-Tax Contributions, shall be made until the earliest time such

Before-Tax Contributions may be distributed without violating any provisions of section 401(k) of the Code and the regulations issued thereunder.

(e)     Upon the election, or upon a deemed election as a result of a failure to timely make an election, of the distribution of the Participant's interest in the Plan, any portion of a loan which is still outstanding shall be treated as having been distributed to the Participant at that time.

## 14.5 Source of Loan Proceeds

In the absence of any Participant election, the proceeds of any loan shall be taken from the Participant's Account according to the following order:

(a)     Before-Tax Contributions and earnings thereon;

(b)     After-Tax Contributions and earnings thereon;

(c)     Rollover Contributions in the Rollover Contributions subaccount and earnings thereon; and

(d)     the Vested Portion of Employer Contributions and earnings thereon.

A Participant may elect to reverse the order of (a) and (b) above. The loan proceeds taken from a Participant's Account shall be based on the value of such amounts as of the Participant's Loan Election Date; provided, however, that any distributions made pursuant to Article 12 and any withdrawals made pursuant to Article 13, on or after the Loan Election Date and before the receipt of the promissory note and security agreement by the Plan Administrator, shall reduce the amount available in a Participant's Account and, if the requested loan no longer meets the requirements of section 14.3, such request shall not be honored. The loan proceeds shall be taken from those Funds in which the subaccounts from which the loan proceeds are taken were invested at the time of the loan. In the event such amounts are invested in more than one Fund, and the amount borrowed is less than the value of all such contributions and the earnings thereon in such subaccount, the loan proceeds from such subaccount shall be taken proportionately from the investment funds described in section 9.1(a); if such Funds are not sufficient to provide the amount of the loan proceeds, the balance shall come (until such amounts in such subaccounts are successively exhausted) from—

(1)     Participant Contributions and Rollover Contributions considered as earnings in the After-Tax Contributions subaccount, and earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund;

(2)     Rollover Contributions and earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund;

(3)      Employer Contributions and the earnings thereon invested in the investment funds described in section 9.1(a), pro rata; and

(4)      Employer Contributions and the earnings thereon invested in the AlliedSignal Common Stock Fund, the General Motors Common Stock Fund, and/or the Delphi Common Stock Fund.

The foregoing notwithstanding, a loan shall not be considered to be a distribution of the Participant's interest in the Plan at the time made but rather shall be treated as an investment of the Participant's Account.

## 14.6 Repayment of Loan

Repayments of Participant loans shall be invested in accordance with the Participant's investment designation in effect at the time of the repayment.

## 14.7 Loan Security

The loan shall be secured by a lien on a Participant's Account (excluding any portion consisting of the IRA Account) to the maximum extent permitted by the relevant provisions of the Code, ERISA, and any regulations or other guidance issued thereunder.

# Article 15. Amendment, Discontinuance, or Termination of the Plan

## 15.1 Amendment, Discontinuance, or Termination of the Plan

The Company shall have the power to amend or modify the Plan at any time and to discontinue contributions under the Plan or terminate the Plan at any time and a designee of the Management Committee of the Company shall have the power to amend or modify the Plan as specified by such Management Committee; provided, however that no modification or amendment shall be made that would reduce the amount of a Participant's Account, or eliminate an optional form of benefit with respect to benefits attributable to service before the amendment (as provided in section 204(g) of ERISA), or make it possible for any assets of the Plan held by the Trustee to revert to the Employer. Moreover, no amendment shall affect the computation of the Vested Portion of a Participant's Account unless a Participant with three or more Years of Vesting Service is permitted to elect, within 60 days after the latest of—

(a)     the date the amendment is adopted;

(b)     the date the amendment becomes effective; or

(c)     the date written notification of such amendment is issued to the Participant,

to have the Vested Portion of his or her Account computed without regard to such amendment; provided, however, that no election shall be given to any Participant if the Vested Portion of his or her Account after the amendment cannot at any time be less than such portion determined without regard to such amendment. Nothing herein shall be construed as prohibiting any amendment or modification of the Plan or of the Trust which is intended to extend eligibility to participate in the Plan to additional categories of employees, or required in order to comply with provisions of any law or regulation relating to the establishment or maintenance of the Plan and Trust, including but not limited to the establishment and maintenance of the Plan or Trust as a qualified employee plan or trust under applicable provisions of the Code and to comply with ERISA, even though such amendment or modification is made retroactively or adversely affects the rights or interests of a Participant under the Plan.

Upon discontinuance of contributions or upon termination of the Plan (in whole or in part) pursuant to this Article, Participant Accounts shall fully vest.

Upon discontinuance of contributions, the provisions of the Plan and the Regulations relating to the making of Participant and Employer Contributions shall no longer be effective, but, except as otherwise provided herein, all other provisions thereof shall continue in force, the Trust shall be continued, and distribution of each Participant's Account shall be made in

accordance with the provisions of the Plan and the Regulations as though contributions had not been discontinued.

Upon termination of the Plan, each Participant shall receive a distribution of his or her Account in a single sum payment as soon as practicable after such termination.

With the approval of the Company, the Plan may be merged or consolidated with another savings or thrift plan qualified under section 401(a) of the Code or the assets or liabilities of the Plan may be transferred to any other such plan or plans. Upon the merger or consolidation of the Plan with, or transfer of Plan assets or liabilities to, any other plan as provided in this section, each Participant in the Plan shall (if the Plan is then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit the Participant would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan had then terminated).

# Article 16. General Provisions

## 16.1 Administrative Costs
All costs and expenses of administering the Plan and managing the Funds, except for internal administrative costs and expenses of the Employer and Delphi, shall be borne by the Participants and paid from their Accounts in the Plan. Brokerage commissions, transfer taxes, and other charges incurred in connection with the purchase and sale of securities shall be charged to and paid from the Fund to which such charges and expenses are attributable.

## 16.2 Communication to Eligible Employees
The Employer shall apprise employees who may be eligible to participate of the existence of the Plan and the salient provisions thereof.

## 16.3 Assignment or Attachment
Except as otherwise provided in this section 16.3, no Participant or Beneficiary shall have the right to transfer, assign, anticipate, pledge, or encumber any right or interest under the Plan, and no part of the Trust assets shall be subject to seizure by legal process resulting from any attempt by creditors of or claimants against such person to attach a Participant's beneficial interest in such assets, and any such disposition or seizure or attempted disposition or seizure shall be void. A Participant may designate a Beneficiary to receive a distribution from the Plan as provided in section 12.2(b) herein, and any person who is an "alternate payee" as defined in section 206(d)(3)(K) of ERISA, shall be eligible to receive a distribution from the Plan pursuant to a Qualified Domestic Relations Order.

## 16.4 Employment
The adoption and maintenance of this Plan shall not be deemed to constitute a contract between the Employer and any employee or to be a consideration for or condition of employment of any person. No provision of the Plan shall be deemed to give any employee the right to continue in the employ of the Employer or to interfere with the right of the Employer to discharge any employee at any time without regard to the effect which such discharge might have upon the employee's participation in the Plan or benefits under it.

## 16.5 Legal Interpretation
This Plan and its provisions shall be construed in accordance with the laws of the State of Michigan to the extent such Michigan law is not inconsistent with the provisions of ERISA. The text of this Plan shall, to the extent permitted by law, govern the determination of the rights and obligations created or referred to herein. Headings to the Articles, sections, and subsections are for reference purposes only and do not limit or extend the meaning of any of the Plan's provisions.

### 16.6 Fiduciary Capacities

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan. For purposes of this paragraph, the term "fiduciary" shall have the same meaning as in ERISA.

### 16.7 Qualified Domestic Relations Orders

The Company has established by separate document on behalf of the Plan a procedure for determining the qualified status of Domestic Relations Orders and for administering distributions to be made under such orders. Notwithstanding any other provision of this Plan, distribution from a Participant's Account may be made to an alternate payee under a Qualified Domestic Relations Order at the time specified in such order. An alternate payee shall be treated as an unmarried Participant who has terminated employment for reasons other than Retirement, Reduction-in-Force, Disability, or death.

### 16.8 Unclaimed Benefits

If any distribution is not claimed by a Participant or Beneficiary after a period of at least three years from the date the distribution was distributed or due to be distributed under the terms of the Plan, and, if the Plan Administrator cannot ascertain the whereabouts of any such Participant or Beneficiary after making a reasonable or diligent effort to locate such Participant or Beneficiary, the Plan Administrator, if it so elects, may direct that such distribution to such Participant or Beneficiary be cancelled in the records of the Plan and the amount thereof applied to reduce subsequent Employer Contributions required under the Plan. Upon such cancellation of a distribution, the Plan shall have no further liability for such distribution forfeited except that in the event such Participant or Beneficiary later notifies the Plan Administrator of his or her whereabouts and requests the distribution due to him or her under the Plan, such Participant or Beneficiary shall be entitled to receive from the Plan the amount cancelled on the records of the Plan. The Employer shall make a contribution to the Plan equal to the reinstated distribution to be made to such Participant or Beneficiary.

### 16.9 Limitation or Suspension of Transaction and Limitation of Daily Securities Trading

Notwithstanding Articles 9, 12, 13, and 14, the Plan Administrator shall, in its sole discretion, limit or suspend any or all investment fund transfers, withdrawals, distributions, and loans, including subsequent investment fund transfers, withdrawals, distributions, and loans elected prior to the determination of such limitation or suspension, in the event the Plan Administrator determines, in its sole discretion, that such action is in the interest of the Plan or the Participants. The Trustee may, in its sole discretion, limit the daily volume of its purchases or sales of securities for the Trust, including, but not limited to, Delphi Common Stock held in the Delphi Common Stock Fund.

### 16.10 Participant Directed Accounts

This Plan is intended to constitute a plan described in section 404(c) of ERISA, and Title 29 of the Code of Federal Regulations section 2550.404c-1, and the fiduciaries of this Plan shall

be relieved of liability for any losses which are the direct and necessary result of investment instructions given by the Participant.

# Article 17. Custody, Registration, and Voting of Delphi Common Stock; Tender Offer Provisions

## 17.1 Custody and Voting of Delphi Common Stock

All shares of Delphi Common Stock acquired by the Trustee shall be held in the possession of the Trustee or its designee until disposed of pursuant to provisions of the Plan. Such shares may be registered in the name of the Trustee or its nominee. Before each annual or special meeting of the shareowners of Delphi, the Plan Administrator shall cause to be sent to each Participant (or Beneficiary of a deceased Participant whose Accounts are then still held under the Plan) a copy of the proxy solicitation material for the meeting, together with a form requesting confidential instructions to the Trustee as to the voting of the shares of Delphi Common Stock allocated to each Participant's Account, whether or not vested. The Trustee, itself or by proxy, shall vote the shares of Delphi Common Stock in such Accounts in accordance with the instructions of the Participant (or any such Beneficiary). If prior to the time of such meeting of shareowners the Trustee shall not have received instructions with respect to any shares of Delphi Common Stock allocated to Participants' Accounts, the Trustee, itself or by proxy, shall vote all such shares in the same ratio as the shares with respect to which instructions were received from Participants (and any such Beneficiaries).

## 17.2 Tender or Exchange of Delphi Common Stock

(a)     Each Participant (or, in the event of a Participant's death, the Participant's Beneficiary) shall have the right, to the extent of shares of Delphi Common Stock allocated to the Participant's Account, confidentially to direct the Trustee in writing as to the manner in which to respond to a tender or exchange offer with respect to Delphi Common Stock. The Plan Administrator shall utilize its best efforts to timely distribute or cause to be distributed to each Participant such information as will be distributed to shareowners of Delphi, in connection with any such tender or exchange offer. If the Trustee shall not receive timely directions from a Participant as to the manner in which to respond to such a tender or exchange offer, the Trustee shall not tender or exchange any shares of Delphi Common Stock, with respect to which such Participant has the right of direction.

(b)     Cash proceeds received by the Trustee from the sale or exchange of any shares of Delphi Common Stock pursuant to subsection (a) of this section 17.2 shall be invested by the Trustee in the investment funds described in section 9.1(a), in accordance with directions from Participants. Property other than cash received by the Trustee from the sale or exchange of any shares of Delphi Common Stock shall be held by the Trustee in the Stable Value Fund regardless of whether such property is otherwise qualified thereunder. The Trustee shall allocate the proceeds from any shares of Delphi Common Stock sold or exchanged to the Accounts of Participants who directed the Trustee to sell or exchange such shares.

(c)    Any decision by a Participant to tender (or not tender) or to exchange (or not exchange) pursuant to section 17.2(a) and any direction made by a Participant pursuant to section 17.2(b) shall constitute an exercise of control over the assets credited to the Participant's Account by such Participant within the meaning of section 404(c) of ERISA and each Participant who so exercises such control shall, by such exercise, release and agree, on the Participant's own behalf and on behalf of the Participant's heirs and beneficiaries, to indemnify and hold harmless the Trustee and the Employer from and against any claim, demand, loss, liability, cost, or expense (including reasonable attorneys' fees) caused by or arising out of such exercise, including without limitation any diminution in value or losses incurred from such exercise.

# Article 18. Top-Heavy Plan Provisions

## 18.1 Determination Date

If, as of the Determination Date, the Plan is a Top-Heavy Plan, as defined in section 18.2 below, the provisions of this Article 18 shall apply.

The Determination Date for the first Plan Year shall be the last day of such Plan Year. For all subsequent Plan Years the Determination Date shall be the last day of the preceding Plan Year.

## 18.2 Top-Heavy Plan

(a)     The Plan shall be considered a Top-Heavy Plan, if, as of the Determination Date, either:

   (1)   the aggregate of all account balances of Key Employees under the Plan exceeds 60 percent of the sum of all account balances of all Employees under the Plan excluding former Key Employees; or

   (2)   the Plan is part of a Top-Heavy Group, as defined in section 18.5 below.

   Notwithstanding anything in this subsection (a), if this Plan is part of an aggregation group, as defined in section 18.5 below, that is found not to be Top Heavy, then this Plan shall not be a Top-Heavy Plan.

(b)     When determining whether the Top-Heavy rules apply for any Plan Year—

   (1)   Rollover contributions and direct plan-to-plan transfers initiated by an Employee and accepted by this Plan, will not be recognized with respect to this Plan if the rollover contribution or direct plan-to-plan transfer came from a plan not maintained by an Employer or Affiliated Company.

   (2)   Any account balances for an Employee who is not currently a Key Employee, but at one time was a Key Employee, shall not be recognized for the Plan Year ending on the Determination Date.

   (3)   The account balances for an Employee shall include aggregate distributions made with respect to such Employee under the Plan during the five-year period ending on the Determination Date, except for the distributions made to former Key Employees excluded above, and distributions rolled over to a plan maintained by the Employer or Affiliated Company.

   (4)   If an individual has not performed any service for the Employer at any time during the five-year period ending on the Determination Date, any accrued benefit or account balance for such individual shall not be taken into account.

### 18.3 Key Employee

Key Employee shall mean any Employee or former Employee who, at any time during the Plan Year or any of the four preceding Plan Years, is—

(a)     an officer of the Employer having an annual Compensation greater than 50 percent of the defined benefit dollar limitation under section 415(b)(1)(A) of the Code (as it may be increased by the Secretary of the Treasury for any applicable cost-of-living increases); however, the maximum number of officers considered Key Employees may not exceed—

    (1)     three, if there are less than 30 Employees;

    (2)     10 percent of all Employees, if there are between 30 and 500 Employees; or

    (3)     50, if there are more than 500 Employees.

Officers shall include only those administrative executives who regularly and continuously serve as such. Title alone shall not be determinative of officer status;

(b)     one of the ten Employees earning an annual Compensation of at least the maximum defined contribution annual additions dollar limit under Code section 415 and owning (or considered as owning within the meaning of Code section 318) more than both one-half of 1 percent interest and the largest interests in the Employer;

(c)     a 5-percent owner of the Employer, meaning any person who owns (or is considered as owning within the meaning of section 318) more than 5 percent of the outstanding stock of the Employer; or

(d)     a 1-percent owner of the Employer having an annual Compensation from the Employer of more than $150,000, meaning any person who owns (or is considered as owning within the meaning of section 318) more than 1 percent of the outstanding stock of the Employer.

For purposes of this section 18.3, Employee shall mean any Employee of the Employer or any employee of an Affiliated Company if the Plan is part of a Top-Heavy Group with the plan of an Affiliated Company. Key Employee shall include any beneficiary of a Key Employee, and former Key Employee shall include any beneficiary of a former Key Employee.

For purposes of subsections (b), (c), and (d) above, constructive ownership rules of Code section 318 shall be applied by substituting "5 percent" for "50 percent" in Code section 318(a)(2).

For purposes of determining 1 percent and 5 percent ownership, the aggregation rules of Code section 414(b), (c), and (m) shall not apply.

Notwithstanding anything above, the criteria used in the determination of Key Employees shall be consistent with Code section 416, which is incorporated herein by reference.

## 18.4 Non-Key Employee

Non-Key Employee shall mean any Employee who is not a Key Employee.

## 18.5 Top-Heavy Group

(a)     Top-Heavy Group shall mean an aggregation group where the sum, as of the Determination Date, of—

  (1)   the present value of the cumulative accrued benefits for Key Employees under any defined benefit plan included in the group; and

  (2)   the sum of the account balances of Key Employees under any defined contribution plan included in the group exceeds 60 percent of the same amount determined for all Employees, excluding former Key Employees, under all plans included in the group. If the Determination Date for each plan in the aggregation group is not the same, then the top-heavy status of the group will be determined by adding the results for each separate plan that fall within the same calendar year. All plans maintained by the Employer (including plans that have terminated) during the five-year period ending on a Determination Date must be considered in determining the Top-Heavy group as of that Determination Date.

(b)     The aggregation group must include—

  (1)   any plan of the Employer or Affiliated Company in which a Key Employee is a participant; and

  (2)   any plan of the Employer or Affiliated Company on which a plan covering a Key Employee depends for qualification under the requirements of Code section 401(a)(4) or 410.

The aggregation group may also include, at the election of the Employer, any plan of the Employer or Affiliated Company not required to be included in an aggregation group if such group would continue to meet the qualification requirements of Code sections 401(a)(4) and 410. If such an aggregation group is found not to be Top Heavy, then no plan shall be considered Top Heavy. If the aggregation group is found to be Top Heavy, then all plans in the group, except the plan which was not required to be included, would be considered Top-Heavy Plans.

## 18.6 Minimum Contributions and Benefits for Top-Heavy Plans

If the Plan is or becomes a Top-Heavy Plan, then, notwithstanding the provisions of Article 7 and Appendix A and except as provided in the next paragraph of this section 18.6, the minimum Employer contribution for each Plan Year during which the Plan is a Top-Heavy

Plan to each Participant employed on the last day of the Plan Year who is a Non-Key Employee shall be 3 percent of such Non-Key Employee's Compensation. The minimum Employer contribution shall be provided to each of these Participants regardless of the number of Hours of Service during the Plan Year. The minimum Employer contribution shall be provided to every Employee, otherwise eligible, who declines to make mandatory contributions or salary deferrals as required in the Plan or who has withdrawn mandatory contributions during the Plan Year.

This minimum Employer contribution shall not exceed the percentage of contribution made, or required to be made, for such Plan Year on behalf of the Key Employee for whom such percentage is the highest. Such highest percentage shall be determined for each Key Employee by dividing the Employer contribution for such Key Employee by his Compensation.

For the purposes of this Article, forfeitures shall be counted as Employer contributions. Amounts contributed as a result of a salary reduction agreement shall also be counted as Employer contributions when determining contributions made on behalf of Key Employees.

Notwithstanding the above, if an Employee is included in a unit of Employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between Employee representatives and the Employer and there is evidence that the retirement benefits of these Employees were the subject of good faith bargaining between such Employees and the Employer, then the provisions of this Article 18 shall not apply to that Employee.

## 18.7 Top-Heavy Average Compensation

Top-Heavy Average Compensation shall mean the average compensation paid during the consecutive Top-Heavy Years of Vesting Service, not to exceed five years, which produce the highest average compensation. For purposes of this Article 18, Compensation shall mean compensation as defined in Code section 415(c)(3), but including amounts contributed by the Employer pursuant to a salary reduction agreement which are excludable from the Employee's group income under Code section 125, 402(a)(8), 402(h), or 403(b).

## 18.8 Top-Heavy Years of Service

Top-Heavy Years of Vesting Service shall mean Years of Vesting Service, excluding Plan Years in which the Plan was not a Top-Heavy Plan.

## 18.9 Top-Heavy Group Minimum Contribution

In the case of a Top-Heavy Group consisting of both defined benefit and defined contribution plans, the required minimum Employer contribution for each Top-Heavy Plan Year shall be satisfied by the minimum benefit under the defined benefit plan of the Employer.

The required minimum accrued benefit or Employer contribution for each Top-Heavy Year of Vesting Service for Employees who do not participate in this Plan, but who participate in

another Plan of the Top-Heavy Group shall be satisfied by providing the minimum accrued benefit or contribution under that plan.

If the Employer maintains another qualified plan which provides a minimum benefit or contribution, then the minimum benefit or contribution provided under this Plan shall not, when combined with the benefit or contribution provided by the other plan, exceed the amount required by section 416(c) of the Code.

## 18.10 Minimum Vesting Requirements

If the Plan is or becomes a Top-Heavy Plan as defined in section 18.2, then, notwithstanding the provisions of Article 11, a Participant's Account shall be 100 percent vested upon the completion of five Years of Vesting Service, and shall be vested in the applicable percentage of his account balance under the Plan as follows:

| Number of Years of Vesting Service | Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 or more | 100% |

Years of Vesting Service for the purposes of vesting in a Top-Heavy Plan shall include all Years of Vesting Service, including years prior to January 1, 1984, as well as years during which the Plan is not considered to be a Top-Heavy Plan. Vesting pursuant to this section 18.10 shall apply to each Participant's entire Account. When the Plan becomes a Top-Heavy Plan, however, the Account of any Employee who does not complete one Hour of Service after the Plan becomes Top Heavy is not required to be subject to the minimum vesting schedule for Top-Heavy Plans.

When the Plan ceases to be a Top-Heavy Plan, the vesting schedule shall revert to the schedule defined in Article 11 if the Company so agrees. However, each Participant with at least three Years of Vesting Service may elect to have his nonforfeitable percentage computed under the Plan according to the Top-Heavy vesting schedule.

For purposes of the above paragraph, a Participant shall be considered to have completed three Years of Vesting Service if such service is completed on or prior to the last day of the election period described below.

The election period shall begin no later than the date following the Determination Date on which the Plan is found not to be Top Heavy and shall end no earlier than the later of the following dates:

(a)     the date which is 60 days after such Determination Date; or

(b)     the date which is 60 days after the day the Participant is issued written notice of the change by the Employer or the Plan Administrator.

If the vesting schedule of this Plan is changed, the nonforfeitable percentage of any Participant's Account derived from Employer contributions determined as of the later of the date the change is effective or the date the change is adopted shall not be less than the nonforfeitable percentage computed under the Plan without regard to such change.

## 18.11 Adjustments in Section 415 Limits for Top-Heavy Plans

For Plan Years beginning before January 1, 2000, this Plan is a Top-Heavy Plan or if the Plan and one or more other plans maintained by the Employer or Related Employer in the aggregate are or become a Top-Heavy Group, then the defined benefit plan fraction, as defined in Appendix A shall be applied by substituting 1.0 for 1.25 and the defined contribution plan fraction, as defined in Appendix A, shall be applied by substituting 1.0 for 1.25.

The above paragraph shall not apply if (a) and (b) below are met:

(a)     In the case of a Top-Heavy Group consisting of both defined contribution and defined benefit plans, a minimum benefit shall be provided in the defined benefit plan for each Non-Key Employee who participates in a defined benefit plan equal to the lesser of 3 percent of Top-Heavy Average Compensation, as defined in section 18.7, per Top-Heavy Year of Vesting Service after January 1, 1984, or 30 percent of Top-Heavy Average Compensation, as defined in section 18.7. Notwithstanding, a minimum contribution of 4 percent of Top-Heavy Average Compensation shall be provided for each Non-Key Employee covered only by a defined contribution plan in the Top-Heavy Group.

(b)     The present value of the cumulative accrued benefits (accounts) of all Key Employees under this Plan and any other Plan in an aggregation group, as determined under section 18.5(b) above, does not exceed 90 percent of the present value of the cumulative accrued benefits (accounts) of all Employees in this Plan or in the aggregation group.

* * * * * * * * * *

**In Witness Whereof,** the authorized officers of ASEC Manufacturing have signed this document and have affixed the corporate seal on _____, 199__, but effective as of May 28, 1999.

**ASEC Manufacturing**

**Attest:**

By  _____

Its  _____

By  _____

Its  _____

(Corporate Seal)

8110/S-ASEC.doc97/05Ld  11/30/1999

# Appendix A. Code Limitations on Participant Contributions and Employer Contributions

## A.1 Limitations on Participant Before-Tax Contributions

(a)  **$7,000 Limitation.** In no event may the amount of Before-Tax Contributions to the Plan, in addition to all such salary reduction contributions under all other cash or deferred arrangements (as defined in section 401(k) of the Code) which are maintained by the Employer or an Affiliated Company in which a Participant participates, exceed $7,000 (adjusted for increases in the cost of living under section 402(g) of the Code) in any calendar year. If a Participant participates in another cash or deferred arrangement in any calendar year and his or her total Before-Tax Contributions under the Plan and such other plan exceed $7,000 (as adjusted) in a calendar year, he or she may request to receive a distribution of the amount of the excess deferral (a deferral in excess of $7,000 (as adjusted)) that is attributable to Before-Tax Contributions in the Plan together with earnings thereon, notwithstanding any limitations on distributions contained in the Plan. Such distribution shall be made by the April 15 following the calendar year of the Before-Tax Contribution provided that the Participant notifies the Plan Administrator of the amount of the excess deferral that is attributable to a Before-Tax Contribution to the Plan and requests such a distribution. The Participant's notice must be received by the Plan Administrator no later than the March 1 following the calendar year of the excess deferral. In the absence of such notice, the amount of such excess deferral attributable to Before-Tax Contributions to the Plan shall be subject to all limitations on withdrawals and distributions in the Plan. With respect to any Participant, the amount of any excess deferral distributed under this section A.1 shall be reduced by the amount of any Excess Before-Tax Contributions recharacterized under section A.1(b)(4) of Appendix A or distributed under section A.1(b)(5) of Appendix A for the same Plan Year.

(b)  **Actual Deferral Percentage Test.** Effective for Plan Years beginning on or after January 1, 1998—

(1)  Notwithstanding anything herein to the contrary, in no event shall the Before-Tax Contributions made on behalf of Highly Compensated Eligible Employees or Former Employees with respect to any Plan Year result in an Actual Deferral Percentage for such group of Highly Compensated Eligible Employees or Former Employees which exceeds the greater of:

(A)  an amount equal to 125 percent of the Actual Deferral Percentage for the prior Plan Year for all Eligible Employees and Former Employees other than Highly Compensated Eligible Employees or Former Employees; or

(B)    an amount equal to the sum of the Actual Deferral Percentage for the prior Plan Year for all Eligible Employees and Former Employees other than Highly Compensated Eligible Employees or Former Employees and 2 percent, provided that such amount does not exceed 200 percent of the Actual Deferral Percentage for the prior Plan Year for all Eligible Employees and Former Employees other than Highly Compensated Eligible Employees or Former Employees.

By an amendment to the Plan, the Company may elect to apply the requirements of this section A.1 by using the current Plan Year rather than the preceding Plan Year except that such election may not be changed unless permitted by the Internal Revenue Service.

(2)    The Plan Administrator shall be authorized to implement rules authorizing or requiring reductions in the Before-Tax Contributions that may be made on behalf of Highly Compensated Eligible Employees or Former Employees during the Plan Year (prior to any contributions to the Trust) so that the limitations of this paragraph are satisfied.

(3)    In addition to the reductions set forth in paragraph (2), if the limitations under paragraph (1) are exceeded in any Plan Year, the Plan Administrator may, in accordance with regulations issued under section 401(k)(3) of the Code, authorize or require the recharacterization of Excess Before-Tax Contributions as After-Tax Contributions so that the limitations in that Plan Year are not exceeded. Any Excess Before-Tax Contributions so recharacterized shall remain subject to the withdrawal limitations of Article 13 that apply to Before-Tax Contributions.

(4)    To the extent the limitations under paragraph (1) continue to be exceeded following such recharacterization, the Excess Before-Tax Contributions made on behalf of Highly Compensated Eligible Employees or Former Employees with respect to a Plan Year and income allocable thereto earned in such Plan Year shall then be distributed to such Highly Compensated Eligible Employees or Former Employees as soon as practicable after the end of such Plan Year, but no later than 12 months after the close of such Plan Year. Any Employer Contributions attributable to Excess Before-Tax Contributions shall be forfeited and such forfeitures shall be utilized to reduce Employer Contributions. The amount of income allocable to Excess Before-Tax Contributions shall be determined in accordance with the regulations issued under section 401(k) of the Code.

(5)    The Plan Administrator may utilize any combination of the methods described in the foregoing paragraphs (2), (3), and (4) to assure that the limitations of this paragraph are satisfied. The Plan Administrator may also utilize additional

techniques and methodologies, to the extent permitted under Code section 401(k) and the regulations thereunder, in applying the tests set out in this section A.1. Such techniques may include, but are not limited to, exclusion of Eligible Employees who have not met the minimum age and service requirements of Code section 410(a)(1)(A).

(6)    With respect to any Participant, the amount of any Excess Before-Tax Contributions recharacterized under paragraph (4) shall be reduced by excess deferrals previously distributed to the Participant under section A.1 of Appendix A for the same Plan Year.

## A.2 Limitations on Participant After-Tax Contributions and Employer Contributions

(a)    Notwithstanding anything herein to the contrary, effective for Plan Years beginning on or after January 1, 1998, in no event may After-Tax Contributions (including Before-Tax Contributions which are recharacterized pursuant to section A.1(b)(3)), and Employer Contributions made on behalf of all Highly Compensated Eligible Employees or Former Employees with respect to any Plan Year, result in a Contribution Percentage for such group of Employees which exceeds the greater of (1) or (2) below, where:

(1)    is an amount equal to 125 percent of the Contribution Percentage for the prior Plan Year for all Eligible Employees and Former Employees in the Plan other than Highly Compensated Eligible Employers or Former Employees; and

(2)    is an amount equal to the sum of the Contribution Percentage for the prior Plan Year for all Eligible Employees and Former Employees in the Plan other than Highly Compensated Eligible Employees or Former Employees and 2 percent, provided that such amount does not exceed 200 percent of the Contribution Percentage for the prior Plan Year for all Eligible Employees and Former Employees other than Highly Compensated Eligible Employees or Former Employees or such lesser amount as prescribed in regulations issued by the Secretary of the Treasury to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Eligible Employee or Former Employee.

By an amendment to the Plan, the Company may elect to apply the requirements of this section A.2 by using the current Plan Year rather than the preceding Plan Year except that such election may not be changed unless permitted by the Internal Revenue Service. For purposes of determining whether the Plan satisfies this section A.2(a)—

(A)    all employee and employer matching contributions (within the meaning of section 401(m) of the Code) made under two or more plans that are aggregated

for purposes of meeting the requirements of sections 401(a)(4) or 410(b) of the Code (other than section 410(b)(2)(A)(ii)) shall be treated as if made under a single plan; and

(B)    the Contribution Percentage of any Highly Compensated Employee shall be determined by treating all plans maintained by Delphi or an Affiliate subject to section 401(m) of the Code under which such Highly Compensated Employee is eligible (other than those which may not be permissively aggregated) as a single plan.

If two or more plans are permissively aggregated for purposes of satisfying section 401(m) of the Code, the aggregated plans must satisfy sections 401(a)(4) and 410(b) as if they were a single plan.

To the extent the limitations under section A.2(b)(2) with respect to the multiple use of the alternative limitation continue to be exceeded, Delphi may reduce the Excess Aggregate Contributions as described in sections A.2(c), (d), or (e) below, or both, with respect to all Highly Compensated Employees under the Plan, as is necessary to satisfy the multiple use test.

(b)    The Plan Administrator shall be authorized to implement rules authorizing or requiring reductions in the After-Tax Contributions that may be made by Highly Compensated Eligible Employees or Former Employees during the Plan Year (prior to any contributions to the Trust) so that the limitations of section A.2(a) above are satisfied.

(c)    If the limitations under section A.2(a) above are exceeded, the Excess Aggregate Contributions made with respect to Highly Compensated Eligible Employees or Former Employees with respect to such Plan Year, and any income attributable thereto, shall be distributed to Highly Compensated Eligible Employees or Former Employees in an amount equal to each such Participant's unmatched After-Tax Contributions.

(d)    If the limitations under section A.2(a) continue to be exceeded following the distributions described in section A.2(c), the Excess Aggregate Contributions made with respect to Highly Compensated Eligible Employees or Former Employees with respect to such Plan Year, and any income allocable thereto, shall be distributed to such Highly Compensated Eligible Employee or Former Employee. Any Employer Contributions attributable to the Matched After-Tax Employer Contributions so distributed shall be forfeited, and such forfeitures shall be utilized to reduce Employer Contributions. The distribution of Matched After-Tax Contributions and the forfeiture or distribution of Employer Contributions shall be on a pro rata basis.

(e)     All Excess Aggregate Contributions and any income allocable thereto shall be forfeited or distributed, as described above, as soon as practicable after the close of the Plan Year, but no later than 12 months after the close of the Plan Year in which they occur. The amount of income allocable to Excess Aggregate Contributions shall be determined in accordance with the regulations issued under section 401(m) of the Code. The Plan Administrator is authorized to implement rules under which it may utilize any combination of the methods described in the foregoing subsections (b), (c), (d), and (e) to assure that the limitations of subsection (a) are satisfied. The Plan Administrator may also utilize additional techniques and methodologies, to the extent permitted under Code section 401(m) and the regulations thereunder, in applying the tests set out in this section A.2. Such techniques may include, but are not limited to, exclusion of Eligible Employees who have not met the minimum age and service requirements of Code section 410(a)(1)(A).

## A.3 Limitation on Annual Additions

Notwithstanding the foregoing, Employer Contributions and Participant Contributions shall not be made with respect to any Participant for any Limitation Year to the extent that such contributions, when added to—

(a)     Employer contributions under other Defined Contribution Plans maintained by the Company or any Affiliated Company for such Limitation Year;

(b)     Participant Contributions to the Plan and contributions by the Participant to other Defined Contribution Plans maintained by the Company or an Affiliated Company for such Limitation Year other than rollover contributions as defined in sections 402(a)(5), 403(a)(4), and 408(d)(3) of the Code);

(c)     any forfeiture which may be allocated to a Participant under the Plan and any such other Defined Contribution Plans for such Limitation Year; and

(d)     amounts described in sections 415(l) and 419A(d)(2) of the Code, would exceed the lesser of—

    (1)   25 percent of the Participant's Compensation for such Limitation Year; or

    (2)   $30,000 or, if greater, one-fourth of the defined benefit dollar limitation set forth in section 415(b)(1) of the Code as in effect for such Limitation Year.

Delphi shall be authorized to require reductions in the Annual Additions of a Participant during the Plan Year if it is necessary to satisfy the limitations above.

For Plan Years ending on or before December 31, 1999, in the event that any Participant is a participant under one or more Defined Benefit Plans maintained by the Company or an Affiliated Company, then the sum of the Defined Benefit Plan Fraction and the Defined Contribution Plan Fraction for each Limitation Year shall not exceed 1.0. If it is determined

8110/S-ASEC.doc97/05Ld  11/30/1999

that as a result of the foregoing limitation the contributions or benefits with respect to a Participant must be reduced, such reduction shall first be accomplished, to the extent permissible, with respect to the benefit payable on behalf of said Participant from any Defined Benefit Plan and thereafter shall be accomplished by reduction of Employer contributions to the Participant's accounts in Defined Contribution Plans.

Notwithstanding the foregoing, in the event that the limitations with respect to Annual Additions prescribed hereunder are exceeded with respect to any Participant and such excess arises as a consequence of a reasonable error in estimating the Participant's Compensation, a reasonable error in determining the amount of elective deferrals (within the meaning of section 402(g)(3) of the Code), a reasonable error in the allocation of forfeitures, a reasonable error in determining the amount of elective deferrals (within the meaning of section 402(g)(3) of the Code) or under other limited facts and circumstances which the Internal Revenue Service finds justify the availability of the rules set forth in this section, the excess amounts shall be disposed of as follows: first, unmatched After-Tax Contributions (and the gains attributable thereto) then, to the extent necessary, unmatched Before-Tax Contributions (and gains attributable thereto), then, to the extent necessary, matched After-Tax Contributions (and gains attributable thereto); and then, to the extent necessary, matched Before-Tax Contributions (and gains attributable thereto) shall be returned to the Participant to the extent permissible under section 401(a)(4) of the Code; second, the remaining excess, if any, shall be utilized to reduce Employer Contributions and Before-Tax Contributions on behalf of the Participant for the next succeeding Plan Year, and succeeding Plan Years, as necessary. If the Employee or Former Employee is not a Participant at the end of any such succeeding Plan Year, but an excess amount still exists, such excess amount shall be held unallocated in a suspense account. The suspense account shall be applied to reduce Employer Contributions for Participants in that Plan Year, and succeeding Plan Years, if necessary.

For purposes of this section A.3, the following definitions shall apply:

(A) **"Annual Additions"** for a Defined Contribution Plan shall mean for any year the sum of—

    (i) employer contributions;

    (ii) employee contributions;

    (iii) any allocable share of forfeitures; and

    (iv) amounts described in Code sections 415(1) and 419A(d)(2).

(B) **"Compensation"** shall have the meaning given such term by Code section 414(s).

(C) **"Defined Benefit Plan"** shall mean any Retirement Plan which does not meet the definition of a Defined Contribution Plan.

(D)    **"Defined Benefit Plan Fraction"** shall mean for any year a fraction—

    (i)    the numerator of which is the projected annual benefit of the participant under the plan (determined as of the close of the year); and

    (ii)    the denominator of which is the lesser of—

        (I)    the product of 1.25 multiplied by $90,000 or other dollar limitation in effect under Code section 415(b)(1)(A) for such year; or

        (II)    the product of—

            (A)    1.4, multiplied by

            (B)    the amount which may be taken into account under Code section 415(b)(1)(B) with respect to such individual under the plan for such year.

(E)    **"Defined Contribution Plan"** shall mean a Retirement Plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

(F)    **"Defined Contribution Plan Fraction"** shall mean for any year a fraction—

    (i)    the numerator of which is the sum of the annual additions to the participant's account as of the close of the year; and

    (ii)    the denominator of which is the sum of the lesser of the following amounts determined for such year and for each prior year of service with the Employer—

        (I)    the product of 1.25 multiplied by $30,000 or such other dollar limitation in effect under Code section 415(c)(1)(A) for such year (determined without regard to Code section 415(c)(6)); or

        (II)    the product of—

            (A)    1.4, multiplied by

            (B)    the amount which may be taken into account under Code section 415(c)(1)(B) (or Code section 415(c)(7), if applicable) with respect to such individual under such plan for such year.

(G)    **"Limitation Year"** shall mean the calendar year.

8110/S-ASEC.doc97/05Ld  11/30/1999