(Company Stock Investment Manager-Delphi-Bank)

## INVESTMENT MANAGEMENT AGREEMENT

THIS AGREEMENT is made, entered into and effective as of this 28th day of May, 1999 (the "Effective Date"), by and between General Motors Investment Management Corporation ("GMIMCo"), in its capacity as the Named Fiduciary (as such term is defined by the Employee Retirement Income Security Act of 1974, as amended, "ERISA") for investments of the Delphi Automotive Systems Corporation Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly Rate Employees in the United States (collectively, the "Programs") with its principal place of business at General Motors Investment Management Corporation, 767 Fifth Avenue, New York, New York 10153, and State Street Bank and Trust Company, an entity organized under the laws of Massachusetts, with its principal place of business at 200 Newport Avenue, North Quincy, Massachusetts 02171 hereinafter referred to as the "Investment Manager").

### WITNESSETH

WHEREAS, Delphi Automotive Systems Corporation (the "Corporation") has established the Programs to facilitate the accumulation of savings for its employees (the "Employees"), which Programs are subject to the provisions of ERISA; and

WHEREAS, GMIMCo has entered into and executed a trust agreement (such agreement and any amendments or restatement thereof are hereinafter referred to as the "Trust Agreement") on behalf of the Corporation with a trustee (the "Trustee") establishing trust funds to fund the Programs (the "Trust Funds"); and

WHEREAS, GMIMCo has been designated the Named Fiduciary with respect to control and management of the assets of the Programs with authority to appoint, review and terminate investment managers (as defined in Section 3(38) of ERISA) in accordance with provisions of Section 402(c)(3) of ERISA and to allocate assets among investment managers; and

WHEREAS, the Trust Agreement entered into on behalf of the Corporation provides for the segregation of the Trust Funds into separate investment accounts (the "Investment Accounts") with the principal and accumulated income of each such investment account to be invested by the Trustee as directed by an investment manager appointed by GMIMCo; and

WHEREAS, GMIMCo desires to appoint the Investment Manager to manage the Investment Accounts, and the Investment Manager desires to act in such capacity on the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, GMIMCo and the Investment Manager do hereby covenant and agree as follows:

1. <u>Investment Account</u>.  Exhibit A sets forth the Investment Accounts to be managed and invested by the Investment Manager pursuant to the terms hereof.  Each Investment Account shall consist of the applicable class of common stock of the Corporation, General Motors Corporation ("GM"), Raytheon Company ("Raytheon"), Electronic Data Systems Corporation ("EDS"), and cash or short term U.S. Treasury Securities or investments in a short term investment fund.  The Investment Manager shall determine the applicable amount of common stock of the Corporation, GM, Raytheon, EDS, and cash or short term fixed income securities for each Investment Account, from time to time, based on its estimates of the cash flow requirements of such Investment Account and the Fund Policy (as defined below) for each Investment Account.  Amounts in such Investment Accounts may be reduced or increased from time to time by direction from GMIMCo, the Trustee and/or the Employees to the Investment Manager.

2. <u>Appointment</u>.  GMIMCo represents that it has been delegated the responsibility to appoint investment managers and has the power to enter into this Agreement.  GMIMCo hereby appoints the Investment Manager and the Investment Manager hereby accepts such appointment to act as an investment manager (as defined under Section 3(38) of ERISA) with respect to the Investment Accounts.  This Agreement supersedes any prior agreement with the Investment Manager with respect to the Investment Accounts.

3. <u>Discretionary Authority and Responsibility</u>.  **SUBJECT TO THE TRUST AGREEMENT AND THE WRITTEN FUND POLICY FOR EACH INVESTMENT ACCOUNT (the "Fund Policy")**, the Investment Manager shall be responsible in its sole judgment and discretion for the management and investment of the Investment Accounts.

Upon receipt of any written amendment to the Fund Policy, the Investment Manager shall follow such amended Fund Policy as to any transaction thereafter and shall follow such amended Fund Policy as to the investments existing at the time of such receipt as promptly as practicable.  In no event shall the Investment Manager follow any Fund Policy or any provision of this Agreement which contravenes any applicable law, rule or regulation of any governmental authority or securities exchange.  The Investment Manager, however, shall give prompt written notice of any such contravening law, rule or regulation to GMIMCo.

4. <u>Powers of Investment Manager</u>.  The Investment Manager shall have the following powers with respect to the management and investment of the Investment Accounts, **SUBJECT TO THE TRUST AGREEMENT AND THE FUND POLICY**.  Such powers shall be exercised by directing the Trustee in writing as to their exercise, provided that the purchase or sale of securities or other property may be effectuated by direct communication between the Investment Manager and the broker handling the transaction with oral notification followed by written confirmation to the Trustee under such procedures as agreed to by the Trustee and the Investment Manager:

(a) to establish, form, dissolve, liquidate or take any other actions with respect to any corporation, limited liability company, partnership, trust or other person, including, without limitation, any title holding corporation Section 501(c)(2) or 501(c)(25) of the Code;

(b) to abandon, acquire, convert, dispose of, exchange, exercise, grant, hold, issue, lease, mortgage, permit to expire, permit to be held in escrow, pledge, redeem, sell, subscribe for, surrender, vote, write, or take any and all other actions with respect to Securities or Other Property, and any rights or obligations appurtenant or otherwise relating thereto, including (i) engaging in any transactions involving any combination of and taking any actions necessary or appropriate to settle transactions in puts, calls or other forms of options (covered or uncovered), futures contracts, swaps or other Securities or Other Property; and (ii) entering into stand-by agreements for future investment (either with or without a stand-by fee), short-selling programs, foreign exchange or foreign exchange contracts, swaps, guaranteed investment contracts, synthetic guaranteed investment contracts, bank investment contracts, contracts for the immediate or future delivery of or otherwise pertaining to Securities or Other Property, and similar instruments and other derivative investments;

(c) to initiate, settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the Investment Account, or to commence, join in or defend, or represent the Investment Account in, any suits or proceedings in any court of law or before any other body or tribunal, including, without limitation, any claims with respect to taxes; provided, however, that the Trustee and GMIMCo shall retain the right, in their respective sole discretion, to commence, join in or oppose any such settlements, compromises, arbitrations, suits or proceedings where it may be adversely affected by the outcome, individually or as Trustee, or where it is advised by counsel that such action is required on their respective parts by ERISA or other applicable law;

(d) to commence, join in, consent to or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, liquidation or readjustment of the finances of any person or the Securities or Other Property thereof, and to deposit any Securities or Other Property with any protective, reorganization or similar committee, and to pay or agree to pay the expenses and compensation of any such committee and any assessments levied with respect to Securities or Other Property so deposited;

(e) to borrow money, to guarantee indebtedness or other obligations of other persons, to pledge any Securities or Other Property for the payment of any such loan or guarantee, or for any other purpose (whether or not in connection with the borrowing of money), and to enter into contracts ancillary or relating to such loans, guarantees or pledges; provided, however, no such loans shall be made by the Trustee individually except for loans or temporary advancements to the Investment Account on a cash or overdraft basis on terms as shall be approved by the Investment Manager who is a qualified professional asset manager under ERISA, or GMIMCo in compliance with Prohibited Transaction Class Exemption 84-14;

(f) to manage, administer, operate, lease for any number of years (regardless of any restrictions on leases made by fiduciaries), develop, improve, repair, alter, demolish, mortgage, pledge, grant options with respect to, or otherwise deal with any property or interest therein at any time held by it; to renew, extend or participate in the renewal or extension of any mortgage upon such terms as may be deemed advisable;

(g) to agree to a reduction in the rate of interest on or other modification in the terms of any mortgage, loan or guarantee; to waive or enforce any default whether in the performance of any covenant or condition of any mortgage, loan or guarantee in such manner and to such extent as may be deemed advisable, to exercise and enforce any and all rights of foreclosure, to bid on property in foreclosure, to take a deed in lieu of foreclosure with or without paying consideration therefor and in connection therewith to release the obligation on the bond secured by such mortgage, and to exercise and enforce in any action, suit or proceedings at law or in equity any rights or remedies in respect of any such mortgage, loan or guarantee;

(h) to convert monies received with respect to assets in the Investment Account into U.S. dollars or other currencies through the Trustee's or the Investment Manager's customary channels, including, without limitation, the effecting of such conversions through the Trustee or one of its affiliates;

(i) to timely collect dividends, interest, rents, royalties and other forms of income on or distributions in respect of Securities or Other Property held in the Investment Account;

(j) to exercise any right appurtenant to any Securities or Other Property, including without limitation, by general or limited power of attorney, or by serving or otherwise acting as a general or limited partner of a partnership, a managing member of a limited liability company, a member of an association, committee or other organization or in any similar capacity with respect to any person;

(k) to invest at any bank (including the Trustee) (i) in any type of interest bearing investments (including, but not limited to, savings accounts, money market accounts, certificates of deposit and repurchase agreements) and (ii) in non-interest bearing accounts (including, but not limited to, checking accounts);

(l) to invest in collective investment funds maintained by the Trustee or by other banks for the investment of the assets of employee benefit plans qualified under Section 401(a) of the Code ("Collective Trust"), whereupon the instruments establishing such funds, as amended, shall be deemed a part of the Trust Agreement and incorporated by reference therein; and

(m) to invest in open-end and closed-end investment companies, regardless of the purposes of which such funds were created, including those managed, serviced or advised by the Trustee, an affiliate of the Trustee, and any partnership, limited or unlimited, joint venture and other forms of joint enterprise created for any lawful purpose.

The term "Securities or Other Property" used herein means any property of any kind or nature, whether real or personal, tangible or intangible, whole or part interest therein, wherever situate, without being limited to the classes of property in which trustees are authorized to invest trust funds by any law or any rule of court of any State, including but without being limited to: currency, evidences of obligations or indebtedness of any person, trust or participation certificates, general or limited interests in partnerships, membership interests in any organization or other person, insurance or annuity contracts, guaranteed investment contracts, synthetic guaranteed investment contracts, bank investment contracts, leaseholds, fee titles, mortgages or other interests in realty, preferred or common stocks, American depositary receipts, certificates of deposit, evidences of ownership in joint ventures, swap contracts, futures and/or option contracts, short-selling programs, foreign exchange contracts, contracts for future or immediate receipt or delivery of securities or relating to the lending of securities or property (including securities or other property of the Corporation or any subsidiary thereof) and other derivative investments.

5. <u>Reports, Valuations, Certifications, Meetings</u>. GMIMCo shall certify to the Trustee the appointment of the Investment Manager and the amounts of the Investment Accounts, and the Investment Manager shall provide the Trustee and GMIMCo with a certificate evidencing the Investment Manager's duly authorized representatives for communications with the Trustee and GMIMCo. The Investment Manager shall notify GMIMCo with respect to any proposed change in its representatives primarily responsible for the performance of the duties specified hereunder, or any proposed change in the ownership of the Investment Manager.

The Investment Manager shall deliver monthly statements to the Trustee indicating all investments in the Investment Accounts and their market values as of the close of business on the last business day of each month together with a schedule of purchases and sales including brokerage commissions and such other reports and information as shall be reasonably requested from time to time by GMIMCo.

The Investment Manager shall, upon the request of GMIMCo, meet with representatives of GMIMCo to discuss the investment of the Investment Accounts' assets or shall submit its analysis in writing as GMIMCo may request from time to time.

GMIMCo shall provide the Investment Manager with a certificate of GMIMCo certifying the names and specimen signatures of the individuals who are authorized to act on behalf of GMIMCo. The Investment Manager shall be fully protected in relying upon any notice, instruction, direction or communication that the Investment Manager reasonably believes (based upon the most recent certificate of GMIMCo that has been received by the Investment Manager) to have been executed by an individual who is authorized to act on behalf of GMIMCo. In addition, the Investment Manager may accept as the act or direction of GMIMCo any writing purporting to be such act or direction and signed by the Chairman of GMIMCo.

6. <u>Custody of Assets.</u> The Trustee shall maintain physical possession of all of the assets of the Investment Accounts in compliance with Section 403(a) of ERISA and the regulations promulgated thereunder. Subject to Section 4(l), nothing herein shall be deemed to authorize the Investment Manager to take or receive physical possession of any of the assets of the Investment Accounts, it being intended that sole responsibility for safekeeping thereof (in such investments as the Investment Manager may direct) and the consummation of all purchases, sales, deliveries and investments made pursuant to the Investment Manager's direction shall rest upon the Trustee.

7. <u>Brokerage.</u> The Investment Manager will endeavor to secure the best available execution and terms of brokerage transactions for the Programs (with due regard to the quality of research and other services provided by the broker to the Investment Manager on behalf of the Programs). Except as otherwise specifically directed by GMIMCo, the Investment Manager shall have complete discretion to select any broker or dealer to effect securities transactions on behalf of the Programs; provided that if the Investment Manager or an affiliate is selected to conduct brokerage transactions on behalf of the Programs, GMIMCo must approve any such arrangement in accordance with a separate agreement. Prior to the execution of such separate agreement, the Investment Manager shall have furnished GMIMCo with a description of its brokerage placement practices and shall have disclosed any soft dollar arrangements.

8. <u>Representations, Standard of Conduct</u>. The Investment Manager represents and warrants that it is a bank as defined under the Investment Advisers Act of 1940, as amended, is qualified to act as an investment manager under Section 3(38) of ERISA, and agrees that it shall remain so qualified at all times during the term of this Agreement. The Investment Manager represents and warrants that it has completed, obtained or performed all registrations, filing, approvals, authorizations, consents and examinations required by any government or governmental authorities for the performance of the acts contemplated by this Agreement, and will maintain such status during the term of this Agreement. The Investment Manager represents that it has furnished GMIMCo such information as would be furnished on Parts I and II of the Form ADV registration statement if the Investment Manager was required to file such a form. The Investment Manager agrees to provide GMIMCo with copies of all such information on an annual basis and any amendments to such information as they occur.

The Investment Manager shall maintain and enforce a code of conduct for its employees during the term of this Agreement and agrees to provide GMIMCo with a copy of such code of conduct and any amendments thereto.

The Investment Manager acknowledges that it is a fiduciary, within the meaning of ERISA, with respect to the Programs and represents and warrants that it is familiar with and will comply with the fiduciary responsibility provisions of Title I, Part 4, of ERISA in the performance of its obligations under this Agreement. The Investment Manager shall notify GMIMCo of any potential prohibited transaction which may arise by reason of any action or inaction of the Investment Manager or of which it otherwise becomes

aware. The Investment Manager shall discharge its duties under this Agreement solely in the interest of the participants of the Programs and their beneficiaries and (i) for the exclusive purpose of providing benefits to such participants and their beneficiaries and defraying reasonable expenses of administering the Programs; (ii) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, (iii) by diversifying the investments in the Investment Accounts so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (iv) in accordance with the documents and instruments governing the Programs and the provisions of this Agreement insofar as they are consistent with the provisions of ERISA, as the same may from time to time be amended, copies of which will be delivered to the Investment Manager upon request to GMIMCo. The Investment Manager shall have no responsibility whatsoever for the management of any assets of the Programs other than the assets of the Programs in the Investment Accounts.

        9. <u>Professional Liability Insurance</u>. The Investment Manager represents that it has procured Professional Liability Insurance which specifically includes coverage for the assets identified in Exhibit A in the amount of the lesser of $10,000,000 or ten percent (10%) of the value of the Investment Accounts' assets per occurrence and in the aggregate. In addition, while the assets of the Investment Accounts are held pursuant to a common, collective or commingled trust in accordance with Section 4(l) above, the Investment Manager represents that it has procured Fiduciary Dishonesty Insurance which specifically includes coverage for those assets held pursuant to a common, collective or commingled trust in accordance with Section 4(l) above in the amount of coverage as indicated in the previous sentence. The Investment Manager shall furnish to GMIMCo on an annual basis certificate(s) of insurance along with a letter setting forth (i) the amount(s) of coverage, (ii) policy number(s), (iii) expiration date(s), (iv) deductible, and (v) carrier name(s) of both such insurance. Furthermore, the Investment Manager shall provide sixty (60) days prior written notice to GMIMCo in the event that the Investment Manager decides to diminish such coverage. The Investment Manager shall notify GMIMCo promptly of any claim made under said Professional Liability Insurance and/or said Fiduciary Dishonesty Insurance and any payment of proceeds; provided such claim or such payment of proceeds would materially affect the Investment Manager's coverage under such policies. The maintenance of Professional Liability Insurance and Fiduciary Dishonesty Insurance shall not release the Investment Manager from any obligations or liabilities under this Agreement.

        The Investment Manager shall hold harmless and indemnify the Trust Funds and GMIMCo from and against any and all liability or loss, including any liability or loss incurred while the assets of the Investment Accounts are held pursuant to a common, collective or commingled trust in accordance with Section 4(l) above, which they or any of them may incur or suffer to the extent that such liability or loss was caused by the negligence, misfeasance or bad faith of the Investment Manager or agents of the

Investment Manager, the inaccurate representation of or breach by the Investment Manager of any of the provisions set forth in this Agreement or incorporated herein, or any liability or loss incurred as a result of the lending of securities in connection with a common, collective or commingled trust in accordance with Section 4(l) above. Notwithstanding the foregoing indemnity, the Investment Manager shall in no event be an insurer or guarantor of the financial performance of the assets managed in accordance with this Agreement.

10. <u>Compensation for Services Hereunder as Investment Manager</u>. The Investment Manager shall be entitled to receive as compensation for services rendered hereunder a fee determined and paid in accordance with a separate written agreement between GMIMCo and the Investment Manager; provided that if and as soon as the Investment Manager charges a fee to other clients for the management of portfolios having similar characteristics or that are managed by a substantially similar process with substantially the same services under a fee rate schedule that would reduce the fee paid hereunder, then the Investment Manager shall promptly so notify GMIMCo and the fee hereunder shall be reduced accordingly.

11. <u>Services to Other Clients</u>. The services of the Investment Manager to the Programs are not to be deemed exclusive, it being understood that the Investment Manager performs investment advisory and management services for various other clients. GMIMCo agrees that the Investment Manager may give advice and take action with respect to any of its other clients which may differ from advice given or from the timing or nature of actions taken with respect to the Investment Accounts. The Investment Manager promptly shall notify GMIMCo if it has reason to believe that its representation of any other client results in or may result in a conflict of interest. The Investment Manager shall not disclose the fact that it has been retained to provide investment advisory services by GMIMCo in client lists provided to industry publications or through its general marketing materials, but may disclose such relationship in specific marketing presentations to prospective accounts.

12. <u>Assignment of Agreement</u>. The Investment Manager hereby agrees that it shall not assign or transfer this Agreement without the prior written consent of GMIMCo.

13. <u>Termination</u>. This Agreement shall continue in effect until terminated by either the Investment Manager or GMIMCo by giving notice to the other party and to the Trustee, except that at the request of GMIMCo, the Investment Manager shall remain as Investment Manager hereunder until GMIMCo selects and appoints a successor Investment Manager. Upon termination, the Investment Manager shall provide promptly such documentation, as GMIMCo may request, pertaining to Investments in the Investment Accounts. Notwithstanding the foregoing, the indemnification provisions set forth in Section 9 above shall survive the termination of this Agreement.

14. <u>Applicable Law</u>.  Subject to the provisions of ERISA, as the same may be amended from time to time, this Agreement shall be construed, administered and enforced according to the laws of the State of New York.

15. <u>Notices</u>.  All notice hereunder shall be in writing and shall be sent to GMIMCo, Attention: Managing Director, Defined Contribution Plans, General Motors Investment Management Corporation, 767 Fifth Avenue, New York, New York  10153 and to the Investment Manager at 200 Newport Avenue, North Quincy, Massachusetts, 02171, Attention: _____, or otherwise as subsequently advised in writing by either party to the other.

16. <u>No Individual Liability</u>.  It is understood and agreed that GMIMCo is entering into this Agreement solely for the account of the Programs, and the employees of the Corporation, or GMIMCo, in all actions taken in connection with this Agreement will be acting for the account of the Programs and not for their own account or the account of their respective employers, and that, to the fullest extent permitted by law, no such employee or employer shall have any personal liability to the Investment Manager or any officer, director, employee or agent thereof, or any party claiming through any such person, under or in connection with this Agreement, but that any such obligation or liability shall be solely that of GMIMCo or the Trust Funds (to the extent permitted by law).

17. <u>Entire Agreement</u>.  This Agreement embodies the entire understanding of the parties, supersedes any prior agreements or understandings with respect to the subject matter hereof and cannot be altered, amended, supplemented or any provisions waived, except by written agreement of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION

Witness: _____  By: _____

STATE STREET BANK AND TRUST
COMPANY

Witness: _____  By: _____
Title:

9

CERTIFICATE

OF

AUTHORIZED SIGNATORIES

FOR

GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION

By: W. Allen Reed

Title: President

Specimen Signature: *W. Allen Reed* /s/

By: Michael E. Klehm

Title: Managing Director, Defined Contribution Plans

Specimen Signature: *M. E. Klehm* /s/

EXHIBIT A

INVESTMENT ACCOUNTS
FOR
INVESTMENT MANAGEMENT AGREEMENT
BETWEEN
GENERAL MOTORS
INVESTMENT MANAGEMENT CORPORATION
AND
STATE STREET BANK AND TRUST COMPANY

**GENERAL MOTORS COMMON STOCK, $1 2/3 PAR VALUE**
**GENERAL MOTORS CLASS H COMMON STOCK**
**RAYTHEON COMPANY CLASS A COMMON STOCK**
**ELECTRONIC DATA SYSTEMS CORPORATION COMMON STOCK**
**DELPHI AUTOMOTIVE SYSTEMS CORPORATION COMMON STOCK**